### SEW CLEAN DRYCLEANERS AND LAUNDERS, INC., Appellee,

v.

### DRESS FOR SUCCESS CLEANERS, INC. and GIANT EAGLE, INC., Appellants.

### Sew Clean Drycleaners and Launders, Inc., Appellant,

v.

### Dress for Success Cleaners, Inc. and Giant Eagle, Inc., Appellees.

Superior Court of Pennsylvania.

Argued March 28, 2006.

Filed July 17, 2006.

William L. Stang, Pittsburgh, for Giant Eagle and Dress for Success.

John P. Lacher, Pittsburgh, for Sew Clean.

BEFORE: FORD ELLIOTT, P.J., BOWES and JOHNSON, JJ.

OPINION BY BOWES, J.:

¶ 1 Dress For Success Cleaners, Inc. ("DFS Cleaners") and Giant Eagle, Inc. ("Giant Eagle") appeal from the June 20, 2005 order compelling arbitration of an action instituted by Sew Clean Drycleaners and Launders, Inc. ("Sew Clean"). Sew Clean has filed a cross-appeal. For reasons discussed *infra*, we quash the cross-appeal, vacate the June 20, 2005 order in part, and remand for proceedings consistent with this opinion.

¶ 2 The record reveals the following. DFS Cleaners provides dry cleaning services for various supermarkets pursuant to written contracts with the supermarkets and dry cleaning plants. Under these contracts, DFS Cleaners is permitted to set up a kiosk at a supermarket where patrons can deposit and retrieve their dry cleaning. The kiosks are staffed by a supermarket employee who has been trained by DFS Cleaners. When clothes are deposited, the garments are transported to an off-site dry cleaning plant that has contracted with DFS Cleaners to provide cleaning services. DFS Cleaners, the supermarket, and the dry cleaning plant subsequently split the proceeds in accordance with the terms of the respective contracts.

¶ 3 In the present case, DFS Cleaners entered into a "license agreement" with Sew Clean on October 7, 1999, wherein DFS Cleaners hired Sew Clean to perform dry cleaning services for garments deposited at various Giant Eagle Supermarkets in the Pittsburgh area. On November 2, 2002, employees of a local power company allegedly caused a power surge that damaged Sew Clean's electric dry cleaning equipment. As a result, Sew Clean was unable to meet its contractual obligations for a short period, and DFS Cleaners opted to terminate its license agreement with Sew Clean. Giant Eagle was not a party to the license agreement.

¶ 4 On December 27, 2004, Sew Clean filed a seven-count complaint against DFS Cleaners and Giant Eagle alleging, *inter alia*, that DFS Cleaners: (1) breached the agreement with Sew Clean by failing to pay Sew Clean for $80,000 worth of services performed under the contract; (2) fraudulently represented that it intended to continue performing services under the contract for an extended period, thereby causing Sew Clean to incur lost profits in excess of $1 million; and (3) breached a fiduciary duty to Sew Clean by terminating the agreement in bad faith. In addition, Sew Clean averred that Giant Eagle: (1) caused DFS Cleaners to breach the license agreement; (2) aided and abetted DFS Cleaners in making the aforementioned fraudulent misrepresentations by encouraging DFS Cleaners to terminate the agreement in bad faith; and (3) aided and abetted DFS Cleaners in breaching its

fiduciary duty to Sew Clean by encouraging DFS Cleaners to terminate the agreement in bad faith.

¶ 5 On January 31, 2005, DFS Cleaners and Giant Eagle filed a petition to compel arbitration as to DFS Cleaners and Sew Clean and stay judicial proceedings against Giant Eagle. DFS Cleaners argued that Sew Clean was required to arbitrate all claims against it pursuant to the arbitration clause contained in section 4.2 of the license agreement, and Giant Eagle, which is not a party to the contract, averred that all claims against it should be stayed pursuant to 42 Pa.C.S. § 7304(d) pending the outcome of the arbitration proceedings. Specifically, Giant Eagle argued that a stay would serve the interests of judicial economy by avoiding piecemeal litigation of Sew Clean's claims against Giant Eagle, which are fundamentally intertwined with Sew Clean's claims against DFS Cleaners. By order dated June 20, 2005, the trial court granted the petition to compel arbitration as to DFS Cleaners but ruled that the action against Giant Eagle could proceed in the Allegheny Court of Common Pleas. This appeal and cross-appeal followed.

¶ 6 Herein, DFS Cleaners and Giant Eagle assert that the trial court erred in refusing to stay the court action against Giant Eagle pending the outcome of the arbitration proceedings. In its cross-appeal, Sew Clean argues, *inter alia,* that: (1) the trial court erred in determining that the present dispute falls within the scope of the arbitration clause contained in the license agreement; and (2) DFS Cleaners waived its right to arbitration.

■ ¶ 7 We cannot address Sew Clean's arguments because they pertain to the component of the order in question that directed DFS Cleaners and Sew Clean to proceed to arbitration, and such orders do not constitute final, appealable orders. *See Schantz v. Gary Barbera Dodgeland,* 830 A.2d 1265 (Pa.Super.2003) (appeal quashed because order directing arbitration was not final order). Since the parties herein have been forced into court rather than put out of court, the portion of the order compelling DFS Cleaners and Sew Clean to submit to arbitration is interlocutory. *Id.*

■ ¶ 8 However, we find that the remaining portion of the June 20, 2005 order, *i.e.,* the part that allowed Sew Clean to proceed with its claims against Giant Eagle, is appealable as a collateral order under Pa.R.A.P. 313.

A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost. Pa.R.A.P. 313(b). Our Supreme Court has observed:

> The collateral order doctrine is a specialized practical application of the general rule that only final orders are appealable as of right. Thus, Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule.

*Melvin v. Doe,* 575 Pa. 264, 272, 836 A.2d 42, 47 (2003). "To that end, each prong of the collateral order doctrine must be met before an order may be considered collateral." *Id.* To qualify as a collateral order under Rule 313, it is not sufficient that the issue under review is important to a particular party; it "must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Id.* (quoting *Geniviva v. Frisk,* 555 Pa. 589, 598, 725 A.2d 1209, 1213–14 (1999)). *See, e.g., Ben v. Schwartz,* 556 Pa. 475, 729 A.2d 547

(1999) (allowing appeal from discovery order compelling production of putatively privileged documents, where resolution of issue of whether documents were subject to executive or statutory privilege implicated rights rooted in public policy . . . .).

*Stahl v. Redcay,* 897 A.2d 478, 485–86 (Pa.Super.2006).

¶ 9 The first prong of the collateral order doctrine involves determining whether the issue surrounding the order in question can be addressed without examining the ultimate issue in the underlying case. *See Merithew v. Valentukonis,* 869 A.2d 1040 (Pa.Super.2005). In the case at bar, the propriety of the trial court's decision to permit this action against Giant Eagle to proceed can be addressed without analyzing the merits of Sew Clean's claims against DFS Cleaners; . thus, the first prong of the test is satisfied. In addition, if we do not review the trial court's ruling at this point, Giant Eagle will be forced to litigate in the Allegheny County Court of Common Pleas while Sew Clean and DFS Cleaners proceed to arbitration, and the right to review the order in question will be irreparably lost. Therefore, we find that the third requirement has been met.

¶ 10 Finally, under the second prong of the collateral order doctrine, we must determine whether the issue at hand involves rights deeply rooted in public policy. *Stahl, supra.* Given the circumstances of this case, we find that this prong is established as well. As noted, Giant Eagle requested a stay pursuant to 42 Pa.C.S. § 7304(d) (emphasis added), which provides:

An action or proceeding, allegedly involving an issue subject to arbitration, **shall** be stayed if a court order to proceed with arbitration has been made or an application for such an order has been made under this section. If the issue allegedly subject to arbitration is severable, the stay of the court action or proceeding may be made with respect to the severable issue only. If the application for an order to proceed with arbitration is made in such action or proceeding and is granted, the court order to proceed with arbitration shall include a stay of the action or proceeding.

¶ 11 Section 7304(d) embodies a legislative policy to avoid duplicative litigation with the possibility of irreconcilable results in **every** instance where a separate action involves an issue that is subject to arbitration. *See Vertical Resources, Inc. v. Bramlett,* 837 A.2d 1193 (Pa.Super.2003) (discussing public policy aspect of collateral order doctrine). Hence, the issue herein implicates public policy and extends beyond the present litigation; consequently, we are satisfied that we have jurisdiction to review the trial court's refusal to grant a stay in the action against Giant Eagle.

¶ 12 We now consider whether the trial court erred in refusing to stay the court action against Giant Eagle pending the outcome of the arbitration proceedings. Based on the record, we conclude that a stay should have been granted. Clearly, Sew Clean's claims against Giant Eagle relate to the issues that are subject to arbitration, and thus, the trial court should have issued a stay pursuant to 42 Pa.C.S. § 7304(d). Accordingly, we direct the trial court to stay the action against Giant Eagle, upon motion of a party, pending the resolution of the arbitration proceeding. *Accord Schantz, supra* (Superior Court quashed appeal but directed trial court to issue stay upon motion of party); *Stern v. Prudential Financial, Inc.,* 836 A.2d 953, 955 n. 1 (Pa.Super.2003) (when referring matter to arbitration, trial judge must stay civil action until arbitration is completed).

¶ 13 Cross-appeal quashed. Order vacated in part to permit issuance of stay

upon motion of a party. Case remanded. Jurisdiction relinquished.