J-A11035-14

2015 PA Super 179

| DAVID A. PROVENZANO, M.D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| OHIO VALLEY GENERAL HOSPITAL, MARK R. SCHOLL, GENE M. BATTISTELLA, D.O., MARK S. BRENNAN, JOSEPH C. CIRELLI, DAVID W. SCOTT, JANE A. DIXON, KURT R. GINGRICH, MICHAEL E. LALLY, M.D., ANTHONY F. LISANTI, DANIEL B. LONG, VICTORIA MELL, TADESSA TEFERA | |
| Appellants | No. 1270 WDA 2013 |

Appeal from the Order Entered July 23, 2013
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 13-10794

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and OLSON, J.

OPINION BY GANTMAN, P.J.:                    **FILED AUGUST 26, 2015**

Appellants, Ohio Valley General Hospital ("Hospital"), Mark R. Scholl, Gene M. Battistella, D.O., Mark S. Brennan, Joseph C. Cirelli, David W. Scott, Jane A. Dixon, Kurt R. Gingrich, Michael E. Lally, M.D., Anthony F. Lisanti, Daniel B. Long, Victoria Mell, and Tadessa Tefera (collectively "Board") appeal from the order entered in the Allegheny County Court of Common Pleas, which overruled Hospital's and the Board's preliminary objections (based on the existence of an arbitration provision in the parties' employment agreement as well as a prior, pending arbitration proceeding) to the civil complaint of Appellee, David A. Provenzano, M.D.  For the following

reasons, we reverse and remand for referral of all of Appellee's claims to the pending arbitration proceeding.[1]

The relevant facts and procedural history of this case are as follows. Appellee and Hospital entered into an employment agreement on May 27, 2008, for Appellee to perform medical services, subject to the terms and conditions set forth in the agreement. The agreement was effective retroactive to September 19, 2007, and included various terms governing Appellee's professional representations, warranties, and covenants, general professional duties, fees and third party reimbursements, additional professional obligations, compensation, benefits, working facilities, and set-

_____

[1] "As a general rule, an order [overruling] a party's preliminary objections is interlocutory and, thus, not appealable as of right." **Callan v. Oxford Land Development, Inc.**, 858 A.2d 1229, 1232 (Pa.Super. 2004). Rule 311 of the Pennsylvania Rules of Appellate Procedure, however, allows an interlocutory appeal as of right from any order which is made appealable by statute. Pa.R.A.P. 311(a)(8). The Uniform Arbitration Act permits an immediate appeal from a "court order denying an application to compel arbitration made under [S]ection 7304 (relating to proceedings to compel or stay arbitration)." 42 Pa.C.S.A. § 7320(a)(1). Section 7304 of the Uniform Arbitration Act is applicable by way of 42 Pa.C.S.A. 7342(a) (incorporating specified sections of Uniform Arbitration Act in common law arbitration). Here, the employment contract contained an arbitration provision. Hospital and the Board filed preliminary objections asserting, *inter alia*, the pendency of the arbitration as well as the arbitration clause in the employment contract. The court's order overruling the preliminary objections, therefore, is an interlocutory order appealable as of right. **See Callan, supra** (reviewing order overruling vendor's preliminary objections in nature of petition to compel arbitration); **Midomo Co., Inc. v. Presbyterian Housing Development Co.**, 739 A.2d 180 (Pa.Super. 1999) (holding order overruling preliminary objections to compel arbitration was interlocutory order appealable as of right).

offs. The agreement also addressed special circumstances, including disability or death of Appellee during the term of the agreement, and included numerous other miscellaneous provisions. Of particular relevance to the present case are paragraphs 6 and 13. Paragraph 6 states:

6. **TERM AND TERMINATION.**

(a) <u>Initial Term.</u> The initial term of this Agreement shall begin on the Effective Date and shall continue in effect for a period of thirty-six (36) months (the "Initial Term") unless Employee dies or becomes disabled pursuant to the provisions of Section 12, this Agreement expires or this Agreement is terminated earlier as provided for herein. Employee may terminate this agreement within 120 days' notice to employer.

(b) <u>Renewal.</u> Unless either party provides written notice of its intent not to renew this Agreement at least one hundred twenty (120) days prior to the end of the Initial Term or any Renewal Term (as defined herein), upon expiration of the Initial Term, this Agreement will automatically renew for successive three year terms, which such terms may expire or be terminated earlier as provided for herein (the "Renewal Terms"; the Initial Term and the Renewal Terms are hereinafter referred to as the "Term").

(c) <u>Termination.</u> In addition to termination rights set forth elsewhere in this Agreement, the parties shall have the following rights to terminate this Agreement.

(i) Employee shall have the right to terminate this Agreement at any time for any reason upon 120 days prior written notice, provided that, no such termination be effective before September 19, 2009. The Hospital shall have the right to terminate this Agreement at any time for any reason upon one hundred twenty (120) days prior written notice to the other party. In the event the Hospital terminates this Agreement pursuant to this Section 6(c)(i) or 6(b) or in the

event Employee terminates this Agreement due to a change in control or commitment specified in Section 6(d) or (e), the Hospital shall pay Employee two years' annual base salary (or twice the amount of the most recent year in which Employee was employed full time, if Employee has elected to enter private practice pursuant to subsection (f) of this section), as severance pay (including Medical Director stipend under Section 7(c)), and shall reimburse Employee's legal fees if Employee deems it necessary to file legal action to enforce this provision. The parties have agreed that said amount is reasonable.

(ii) Hospital may terminate this Agreement, effective immediately upon written notice to Employee, for "good cause" or pursuant to Hospital's authority to terminate this Agreement as expressly provided for in other provisions of this Agreement. "Good cause" means any of the following events:

(A) Employee's medical license or any related license, certification, or registration expires or is revoked, suspended or limited for any reason, provided that such suspension or limitation substantially impairs Employee's performance of the terms of this Agreement and is pending an appeal by Employee;

(B) Employee is convicted of any offense punishable as a felony or is convicted of a misdemeanor involving moral turpitude or immoral conduct, or Employee commits any act for which civil money penalties or other sanctions may be imposed under Medicare, Medical Assistance or any other governmental health reimbursement system, including but not limited to, suspension from the program;

(C) Employee commits fraud, embezzlement,

misappropriation or the like with respect to Hospital's business or assets;

(D) Employee is sanctioned by the Medical Board of Pennsylvania, or its equivalent, or by any state or local peer review or quality assurance organization, or by Medicare, Medicaid or any third-party payer, provided that such sanction is final and not pending appeal;

(E) Employee breaches any of Employee's representations, warranties or covenants under this Agreement, and such breach is material;

(F) Employee breaches any of the applicable terms of the Exclusive Agreement for pain services at the Hospital;

(G) Employee fails to perform any of the Employee's duties and obligations under this Agreement as determined by the Hospital in its sole discretion and such failure continues for a period of fifteen (15) days after the Hospital notifies Employee of such failure;

(H) Employee commits any intentional or willful conduct that is, in the sole opinion of the Hospital, acting reasonably, injurious to the Hospital, including, but not limited to, violation of Hospital policies on sexual or other harassment;

(I) Employee commits any instance of insobriety or drug abuse while rendering services hereunder; Employee has an addictive disease which, in the Hospital's reasonable judgment, could impair Employee's ability to perform Employee's duties hereunder, or Employee has diverted a controlled substance; or

(J)  Employee fails to perform Employee's professional duties in a manner commensurate with the prevailing standard of performance in the field of chronic pain management.

Excluding the following above items; A, B, C, D, G AND I, if a breach occurs, the Hospital will notify employee of said breach and provide for a cure period no greater than 30 days from the date of the notification.  Should the employee cure the breach, the agreement remains in effect and the employee continues his duties as outlined.

(d)  <u>Change of Control</u>.  In addition to termination rights set forth elsewhere in this Agreement, the Employee shall have the right to terminate this Agreement upon 30 days written notice in the event that there is a change in control of the Hospital.  As used in this Agreement, the term "change of control" means: (i) merger or consolidation of the Hospital with or into any other entity; (ii) transfer of all or substantially all of the Hospital's assets to any other entity; or (iii) any transaction pursuant to which the right to elect, appoint or designate 50% or more of the directors of the Hospital is vested in another entity.

(e)  <u>Change in Commitment.</u>  In addition to termination rights set forth elsewhere in this Agreement, the Employee shall have the right to terminate this Agreement upon 90 days written notice if there has been a substantial change in the Hospital's commitment to support the growth of the Pain Management Program.  If Employee seeks to terminate the Agreement on this basis, he shall first seek a meeting of the officers of the Hospital; and both parties shall in good faith use their best efforts to resolve such dispute.

(f)  <u>Private Practice</u>.  In addition to termination rights set forth elsewhere in this Agreement, if Employee decides to enter into private practice, Employee shall provide the Hospital with 30 days written notice, and, on the date specified in the notice on which Employee shall enter private practice, the provisions of this Agreement that relate to services as the Medical Director of the Pain

Management Clinics shall remain in full force and effect, and all other provisions of this Agreement (*i.e.,* those related to employment status for professional services) shall be terminated, and of no further force and effect, including, but not limited to, the employment benefits in Section 8 and the base salary and additional compensation provisions set forth in Section 7(a). So long as Employee remains Medical Director of the Pain Management Clinics, he will be entitled to conduct his private practice at Hospital facilities as the exclusive provider of pain management services and will be entitled to the relevant medical records. However, Employee shall remain eligible to receive the annual stipends set forth in Section 7(c).

(Physician Employment Agreement at ¶6, pages 4-7; R.R. at 14a-17a).

Paragraph 13 of the agreement states:

13. **<u>DISPUTES: REIMBURSEMENT OF ATTORNEY'S FEES AND COSTS.</u>**

(a) Any disputes regarding the interpretation or application of this Agreement shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect. Any such arbitration shall occur before a single arbitrator sitting in Pittsburgh, Pennsylvania. The arbitrator shall be limited to interpreting and applying the terms of this Agreement. The arbitrator's decision shall be final and binding upon the parties hereto.

(b) The parties hereto shall jointly share the costs of the arbitration, but the Hospital shall fully reimburse Employee for any reasonable attorney's fees and costs (not including damage awards and settlements) incurred by Employee in the event of a dispute between the Hospital and Employee regarding the enforcement of any terms or conditions of this Agreement. Employee shall submit to the Hospital true, correct and complete copies of bills from Employee's attorney, and the Hospital shall remit payment thereof to Employee within fifteen (15) days of delivery thereof to the Hospital.

(*Id.* at ¶13, page 10; R.R. at 20a). Appellee and former Hospital Board

Chair, Edward A. Nicholson, Ph.D., signed the agreement, which was witnessed by Appellee's father, William F. Provenzano, who was then serving as Hospital's Chief Executive Officer. Following the original three-year term, the agreement automatically renewed for a second three-year term (September 20, 2010 through September 19, 2013).

By letter dated February 15, 2013, Hospital notified Appellee that the agreement would not be renewed for a third term. The letter stated the decision not to renew the agreement was ratified by the full Board of Directors at its meeting on January 29, 2013. The letter also said: "Because the decision not to renew will not trigger any obligation on the part of the Hospital to pay severance pay pursuant to Paragraph 6(c) of the Employment Agreement, the Hospital wishes to provide you with more notice than is required under the Employment Agreement." (Letter dated 2/15/13; R.R. at 23a). Upon receipt of the notice, Appellee invoked ¶6(c)(i) of the agreement, claiming Hospital was compelled to pay Appellee severance in the form of two years' annual base salary, calculated to be $850,000.00. Following unsuccessful discourse concerning Hospital's refusal to pay the severance as claimed due, Hospital filed a complaint in arbitration on or about April 19, 2013, before the American Arbitration Association, at AAA Case No. 55 116 00075 13. (*See* Complaint in Arbitration at 1-17; R.R. at 71a−87a.) While the arbitration was pending, Appellee filed a civil complaint on June 7, 2013, alleging two counts: (1) breach of contract

against Hospital and (2) violation of the Pennsylvania Wage Payment and Collection Law ("WPCL") against Hospital **and** its Officers and Directors. (*See* Appellee's Complaint in Civil Action, filed 6/7/13, 1-8; R.R. at 3a−10a.)

In Count I of his civil complaint for breach of contract against Hospital, Appellee averred he has an employment agreement with Hospital, Hospital breached the agreement, failed to rectify and cure its breach, and as a result Hospital is liable to Appellee for $850,000.00 plus interest as well as Appellee's attorneys' fees and costs incurred to enforce the parties' employment agreement. In Count II, Appellee averred Hospital is Appellee's "employer" for purposes of the WPCL and is liable to Appellee for wages, "liquidated damages," and the costs of the suit including reasonable attorneys' fees. Appellee then named each Board member individually and together and identified them as "Board members and/or officers of Hospital" who "individually and collectively exercise policy-making functions and/or have an active role in Hospital's decision-making process regarding payment of wages including the decision not to pay [Appellee] the Severance Pay he is owed per the Employment Agreement." (*Id.* at 8, ¶39; R.R. at 10a). Appellee averred the Board members are jointly and severally liable for Appellee's listed categories of statutory damages. Appellee attached to the complaint a copy of the employment agreement at issue as Exhibit A and a copy of the 2/15/13 notice letter as Exhibit B. On the same date, Appellee also filed a petition to stay the pending arbitration.

Hospital and the Board timely filed preliminary objections to Appellee's civil complaint on June 20, 2013: (1) asserting the pendency of the arbitration action; (2) averring the claims at issue are the subject of a valid arbitration agreement; (3) observing Appellee's claims are premature, because severance pay would not be due in any event until the expiration of the employment agreement in September 2013; (4) asserting Appellee failed to state a claim upon which relief may be granted against the Board; and (5) requesting dismissal of the civil complaint and other relief as available and appropriate. (*See* Hospital's Preliminary Objections, filed 6/20/13, at 1-6; R.R. at 112a−119a; the Board's Preliminary Objections, filed 6/20/13, at 1-5; R.R. at 120a−126a.)

The trial court overruled both sets of preliminary objections by order dated July 23, 2013, with notice per Pa.R.C.P. 236 sent on July 26, 2013, and directed Hospital and the Board to answer Appellee's civil complaint. The court expressly said it overruled the preliminary objections because "the dispute is broader than the hospital corporate entity and [Appellee] did not agree to have an Arbitrator hear his [WPCL] Claim. Further, the chairman and individual board members have not agreed to Arbitration.[2]  Moreover,

_____

[2] We interpret this phrase of the court's decision to mean that the director and individual board members did not sign the employment agreement. The record makes clear, however, that former Hospital Board Chair, Edward A. Nicholson, Ph.D., signed the employment agreement as the representative of Hospital.

- 10 -

there is no Appellate authority cited to me to support [Hospital]. Hence my ruling." (Trial Court Opinion, filed September 6, 2013, at 3-4). Although Appellee had not raised the argument, the court independently relied on Section 260.7 of the WPCL, which provides: "Nothing contained in this act shall in any way limit or prohibit the payment of wages or compensation at more frequent intervals or in greater amounts or in full when or before due. No provision of this act shall in any way be contravened or set aside by a private agreement." 43 P.S. § 260.7. The court did not directly address Appellee's motion to stay the arbitration proceedings.

On August 6, 2013, Hospital and the Board timely filed their notice of appeal. The trial court did not order a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b), and Hospital and the Board filed none.

Hospital and the Board raise two issues for our review:

> MUST [APPELLEE'S] CLAIMS AGAINST [HOSPITAL] BE SUBMITTED TO ARBITRATION?
>
> ASSUMING [APPELLEE'S] CLAIMS AGAINST [HOSPITAL] MUST BE SUBMITTED TO ARBITRATION, MUST HIS CLAIMS AGAINST THE [BOARD] ALSO BE ARBITRATED?

(Hospital and Board's Brief at 4).

For purposes of disposition, we address Hospital's and the Board's issues together. Initially, they contend the claims in Appellee's civil complaint are wholly based on his purported contractual right to severance pay under the employment agreement. Specifically, Hospital and the Board

- 11 -

argue the agreement contains a comprehensive arbitration clause, mandating binding arbitration for all disputes regarding the interpretation or application of the agreement. Hospital and the Board insist Appellee's claims regarding severance pay are directly related to the interpretation and application of the agreement, and the court should have referred the entire controversy to arbitration. Additionally, Hospital and the Board maintain Pennsylvania law does not necessarily compel a "court" to be the sole judicial forum for WPCL claims; courts frequently direct WPCL claims to arbitration. Hospital and the Board submit Appellee's WPCL claim is fully subject to a decision in arbitration, as it is virtually identical to the claim pending in the arbitration forum.

Hospital and the Board also assert Appellee named the Board members as parties to his civil complaint "in an effort to sidestep the…arbitration clause" in the employment agreement. (Hospital's and Board's Brief at 23). Hospital and the Board reason the liability of the Board is "entirely derivative of, and contingent upon, [Hospital's] liability." (**Id.** at 24). Hospital and the Board argue Appellee "needlessly and gratuitously seeks to collect the identical severance pay allegedly due from [Hospital] **and** every officer and volunteer director thereof pursuant to the [WPCL] even though [Hospital] has already represented that it will pay any severance payment determined by the arbitrator(s)…." (**Id.** at 24-25) (emphasis in original). Hospital and the Board maintain the Board members

are in privity with Hospital, so the arbitration agreement covers the Board members under traditional agency principles which bind officers, directors, and/or agents to an organization's agreement to arbitrate, even if they were not direct signatories to the employment agreement at issue.

Additionally, Hospital and the Board aver the pending arbitration is a "prior pending action," because it involves the same claims, parties, and relief as Appellee's civil action. Specifically, Hospital and the Board represent that the arbitration proceeding is competent to determine what, if anything, Appellee is owed under the employment agreement and/or the WPCL; the pending arbitration involves the same claims, parties, and relief sought; the pending arbitration already concerns the question of whether Appellee is entitled to severance under his employment agreement; and his civil action concerns the same claim, *i.e.*, severance pay. Hospital and the Board submit the prior pending arbitration action bars Appellee's civil lawsuit. Hospital and the Board conclude the court should have sustained their preliminary objections on these grounds and referred all of Appellee's claims to arbitration. We agree.

Our standard of review for an order overruling preliminary objections in the nature of a petition to compel arbitration is:

> [L]imited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition. Where a party to a civil action seeks to compel arbitration, a two-part test is employed. First, the trial court must establish if a valid agreement to arbitrate exists between

- 13 -

the parties. Second, if the trial court determines such an agreement exists, it must then ascertain if the dispute involved is within the scope of the arbitration provision. If a valid arbitration agreement exists between the parties, and the plaintiff's claim is within the scope of the agreement, the controversy must be submitted to arbitration.

**Callan, supra** at 1233 (internal citations omitted). In making these determinations, courts must bear in mind:

> (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.

> To resolve this tension, courts should apply the rules of contractual constructions, adopting an interpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement.

**Id.** (internal citations and quotation marks omitted). **See also Warwick Tp. Water and Sewer Authority v. Boucher & James, Inc.**, 851 A.2d 953, 955 (Pa.Super. 2004), *appeal denied*, 583 Pa. 696, 879 A.2d 783 (2005) (reiterating that parties' intent governs the scope of arbitration agreement and is ascertained under general rules of contract interpretation); **Espenshade v. Espenshade**, 729 A.2d 1239, 1243 (Pa.Super. 1999) (stating: "In ascertaining the intent of the parties to a contract, it is their

- 14 -

outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter").

> [T]he court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement. The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement.

*Laudig v. Laudig*, 624 A.2d 651, 653 (Pa.Super. 1993). "If it appears that a dispute relates to a contract's subject matter and the parties agreed to arbitrate, all issues of interpretation and procedure are for the arbitrators to resolve." *Warwick Tp. Water and Sewer Authority, supra* at 955.

> [T]he United States Supreme Court has expressed the concern that allowing a party to invoke judicial review to challenge the parties' overall agreement (and therefore also an arbitration component) would contravene Congress' purpose to facilitate a just and speedy resolution of controversies that is not subject to delay and/or obstruction in the courts. Accordingly, the [U.S.] Supreme Court has determined that a challenge to the validity of a contract as a whole, and not specifically to an arbitration clause, must be presented to the arbitrator and not the courts. **The courts may consider, in the first instance, only those challenges that are directed solely to the arbitration component itself**.

*Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 332-33, 925 A.2d 115, 120 (2007). "The existence of an [arbitration] agreement and whether a dispute is within the scope of the [arbitration] agreement are questions of law and our review is plenary." *Warwick Tp. Water and Sewer Authority, supra* at 955. *See also Pisano v. Extendicare Homes, Inc.*,

- 15 -

77 A.3d 651 (Pa.Super. 2013), *appeal denied*, 624 Pa. 683, 86 A.3d 233 (2014); **McNulty v. H&R Block, Inc.**, 843 A.2d 1267, 1272 (Pa.Super. 2004), *appeal denied*, 578 Pa. 709, 853 A.2d 362 (2004) (stating same).

Pennsylvania law endorses the nationally liberal policy favoring arbitration embodied in the Federal Arbitration Act, at 9 U.S.C. §§ 1−16 ("FAA"):

> [The enactment of the Federal Arbitration Act] expresses a liberal federal policy favoring arbitration agreements. [Congress'] purpose was to overcome state legislative and judicial efforts to undermine the enforceability of arbitration agreements, *inter alia*, by establishing a substantive rule of federal law placing such agreements upon the same footing as other contracts. The federal statute thus requires that a written provision…to settle by arbitration a controversy thereafter arising out of such contract or transaction…shall be valid, irrevocable, and enforceable, save upon any grounds at law or in equity for the revocation of any contract.[2]
>
> > [2] Pennsylvania law reflects an identical policy embodied in the Uniform Arbitration Act. **See** 42 Pa.C.S. § 7303 ("A written agreement to subject any existing controversy to arbitration or a provision in a written agreement to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract").

**Salley, supra** at 330, 925 A.2d at 118-19 (most internal citations and quotation marks omitted). **See also Ross Development Co. v. Advanced Bldg. Development, Inc.**, 803 A.2d 194, 196 (Pa.Super. 2002) (reiterating historical perspective in Pennsylvania law favoring arbitration); **Smith v.**

*Cumberland Group, Ltd*., 687 A.2d 1167, 1171 (Pa.Super. 1997) (stating: "As a matter of public policy, the courts of this Commonwealth strongly favor the settlement of disputes by arbitration").

A "broad" arbitration clause in a contract is one that is unrestricted, contains language that encompasses all disputes which relate to contractual obligations, and generally includes "all claims arising from the contract regardless of whether the claim sounds in tort or contract." *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1276 (Pa.Super. 2004). *See also Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3rd Cir. (Pa.) 2006) (stating, "the presumption [in favor of arbitrability] is particularly applicable where the [arbitration] clause is….broad"). Thus, where the arbitration provision is a broad one, and "[i]n the absence of any express provision excluding a particular grievance from arbitration, …only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *E.M. Diagnostic Systems, Inc. v. Local 169, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 812 F.2d 91, 95 (3rd Cir.(N.J.) 1987); *Miron v. BDO Seidman, LLP*, 342 F.Supp.2d 324, 329 (E.D.Pa. October 20, 2004) (reiterating: "To overcome this presumption as applied to broad arbitration agreements, a party must either establish the existence of an express provision excluding the grievance from arbitration, or provide 'the most forceful evidence of a purpose to exclude the claim from arbitration'"). Therefore:

> Where a contract dispute arises between parties to a contract containing an unlimited arbitration clause, the parties must resolve their dispute through arbitration. Unless the parties impose some limitation on the arbitrator's authority, the arbitrator may decide all matters necessary to dispose of any disputed claims subject to arbitration and, the court may not impose any restrictions *sua sponte*. Accordingly, "all" contract disputes does mean "all" contract disputes unless otherwise agreed by the parties.

**Callan, supra** at 1233 (internal citations omitted). Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." **Brayman Const. Corp., supra**. **See also Falls v. 1CI, Inc. et al.**, 57 A.3d 521, 528 (Md.App. 2012) (stating federal policy uniformly holds "even ambiguous arbitration clauses must be interpreted in favor of arbitration").

On a related topic, generally only parties to an arbitration agreement are subject to arbitration. **Smay, supra** at 1271. Nevertheless, Pennsylvania law has held that non-signatories to an arbitration agreement can enforce the agreement when there is an "obvious and close nexus" between the non-signatories and the contract or the contracting parties. **Dodds v. Pulte Home Corp.**, 909 A.2d 348 (Pa.Super. 2006) (holding plaintiffs' joinder of defendant parent corporation, who was non-signatory to contract, and assertion of claims for fraud and unfair trade practices against non-signatory, did not defeat arbitration agreement; gist of action was contract which bound all parties to arbitration).

One "obvious and close nexus" between the non-signatories and the

contract or the contracting parties arises from the relationship between a signatory principal and a non-signatory agent; if the principal is bound by an arbitration agreement, its agents, employees and representatives are generally likewise bound and can enforce the arbitration agreement, even as non-signatories to the agreement. *See, e.g., Arthur Andersen LLP, et al. v. Carlisle, et al.*, 556 U.S. 624, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) (holding traditional principles of state contract law can be used to allow nonparties to contract to enforce or be bound by arbitration provision in contract; nonparties cannot be categorically barred from arbitration relief); *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1 (1st Cir. (Mass.) 2014) (stating "there are exceptions allowing non-signatories to compel arbitration" and "[a] non-signatory may be bound by or acquire rights under an arbitration agreement under ordinary state-law principles of agency or contract"); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3rd Cir. (Pa) 1993) (holding agent was subject to contractual arbitration provision to which principal was bound; therefore arbitration agreement applied to agent; "Agency logic has been applied to bind non-signatory business entities to arbitration agreements"; "Where the parties to such a clause unmistakably intend to arbitrate all controversies which might arise between them, their agreement should be applied to claims against agents or entities related to the signatories"); *Arnold v. Arnold Corp.–Printed Communications for Business*, 920 F.2d 1269,

1281-82 (6th Cir. (Ohio) 1990) (holding non-signatory officers of corporation and members of its board of directors were entitled to arbitration by virtue of arbitration agreement entered into by corporation, because arbitration agreement applied to them as corporate agents).

Regarding arbitrability of statutory claims, the United States Supreme Court has articulated its view as follows:

> The Federal Arbitration Act…was intended to reverse centuries of judicial hostility to arbitration agreements by placing arbitration agreements upon the same footing as other contracts. The Arbitration Act accomplishes this purpose by providing that arbitration agreements shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. …
>
> The Arbitration Act establishes a federal policy favoring arbitration, requiring that we rigorously enforce agreements to arbitrate. This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights. …we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals should inhibit enforcement of the Act in controversies based on statutes. Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that would provide grounds for the revocation of any contract, the Arbitration Act provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability.
>
> The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If

> Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from [the statute's] text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes.

*Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27, 107 S.Ct. 2332, 2337-38, 96 L.Ed.2d 185, ___ (1987) (some internal citations and all quotation marks omitted) (stating that general language found in statute at issue, which declares void "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of [the Act]," does not indicate Congressional intent to require judicial forum for resolution of statutory claims at issue).  Significantly, the Supreme Court has since held that the FAA preempts statutes which prohibit pre-dispute agreements to arbitrate particular types of claims, because those statutes are contrary to the terms and coverage of FAA.  *Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012).

> When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA. *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, ___, 131 S.Ct. 1740, 1747, 179 L.Ed.2d 742 (2011). … *See also, e.g., Preston v. Ferrer*, 552 U.S. 346, 356, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) (FAA pre-empts state law granting state commissioner exclusive jurisdiction to decide issue the parties agreed to arbitrate); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (FAA pre-empts state law requiring judicial resolution of claims involving punitive damages); *Perry v. Thomas*, 482 U.S. 483, 491, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) **(FAA**

> **pre-empts state-law requirement that litigants be provided a judicial forum for wage disputes)**; ***Southland Corp. v. Keating***, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (FAA pre-empts state financial investment statute's prohibition of arbitration of claims brought under that statute).

***Id.*** at ___, 132 S.Ct. at 1203-04, 182 L.Ed.2d at ___ (some emphasis added) (quotation marks omitted). The essential and "overarching purpose of the FAA…is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings" and resolution of claims. ***Concepcion, supra*** at ___, 131 S.Ct. at 1748, 179 L.Ed.2d at ___.

> This purpose is readily apparent from the FAA's text. Section 2 makes arbitration agreements "valid, irrevocable, and enforceable" as written (subject, of course, to the saving clause); § 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims "in accordance with the terms of the agreement"; and § 4 requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement (assuming that the "making of the arbitration agreement or the failure…to perform the same" is not at issue). In light of these provisions, we have held that parties may agree to limit the issues subject to arbitration, …to arbitrate according to specific rules, …and to limit with whom a party will arbitrate its disputes, ….
>
> The point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute. It can be specified, for example, that the decisionmaker be a specialist in the relevant field, or that proceedings be kept confidential to protect trade secrets. And the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution.

*Id.* at \_\_\_, 131 S.Ct. at 1748-49, 179 L.Ed.2d at \_\_\_.

With respect to the question of whether Pennsylvania's WPCL statutory claims are arbitrable, we first examine the relevant provisions of Section 260.9a, which provide as follows:

### § 260.9a.  Civil remedies and penalties

(a) Any employe or group of employes, labor organization or party to whom any type of wages is payable may institute actions provided under this act.

(b) Actions by an employe, labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages **may be maintained** in any court of competent jurisdiction, by such labor organization, party to whom any type of wages is payable or any one or more employes for and in behalf of himself or themselves and other employes similarly situated, or such employe or employes may designate an agent or representative to maintain such action or on behalf of all employes similarly situated.  Any such employe, labor organization, party, or his representative shall have the power to settle or adjust his claim for unpaid wages.

(c) The employe or group of employes, labor organization or party to whom any type of wages is payable may, in the alternative, inform the secretary of the wage claim against an employer or former employer, and the secretary shall, unless the claim appears to be frivolous, immediately notify the employer or former employer of such claim by certified mail.  If the employer or former employer fails to pay the claim or make satisfactory explanation to the secretary of his failure to do so within ten days after receipt of such certified notification, thereafter, the employer or former employer shall be liable for a penalty of ten percent (10%) of that portion of the claim found to be justly due.  A good faith dispute or contest as to the amount of wages due or the good faith assertion of a right of set-off or counter-claim shall be deemed a satisfactory explanation for nonpayment

of such amount in dispute or claimed as a set-off or counter-claim. The secretary shall have a cause of action against the employer or former employer for recovery of such penalty and the same may be included in any subsequent action by the secretary on said wage claim or may be exercised separately after adjustment of such wage claim without court action.

(d)    In any civil action brought under the provisions of this act, the Secretary of Labor and Industry may require the employer to post bond or security to secure payment of the entire claim of the employe with credit in the amount of any good faith assertion of a right of set-off or counter-claim. Such bond or security shall be posted in the court where the civil action is brought. The request for bond or security shall be signed by the secretary and shall provide that such bond or security in the amount stated shall be posted within 30 days of service thereof on the employer. If such bond or security is not posted within the 30-day period, the employer will be deemed to have admitted his liability and execution may immediately ensue.

*    *    *

(f)    The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs for reasonable attorneys' fees of any nature to be paid by the defendant.

43 P.S. § 260.9a(a)-(d), (f) (emphasis added). The trial court also referred

to Section 260.7, which states:

### § 260.7.   Provisions of law may not be waived by agreement

Nothing contained in this act shall in any way limit or prohibit the payment of wages or compensation at more frequent intervals or in greater amounts or in full when or before due. No provision of this act shall in any way be contravened or set aside by a private agreement.

43 P.S. § 260.7. As this Court has explained:

- 24 -

The Pennsylvania Supreme Court recently articulated the purpose of the WPCL as follows:

> Pennsylvania enacted the WPCL to provide a vehicle for employees to enforce payment of their wages and compensation held by their employers. The underlying purpose of the WPCL is to remove some of the obstacles employees face in litigation by providing them with a statutory remedy when an employer breaches its contractual obligation to pay wages. The WPCL does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement.

The WPCL defines "employer" as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. § 260.2a. To hold an "agent or officer" personally liable for unpaid wages, evidence of an active role in decision making is required.

*Hirsch v. EPL Technologies, Inc.*, 910 A.2d 84, 88 (Pa.Super. 2006), *appeal denied*, 591 Pa. 727, 920 A.2d 833 (2007) (some internal citations omitted).

> The Legislature had some purpose for including an agent or officer of a corporation employing persons in the Commonwealth within the definition of employer, and the only apparent purpose was to subject these persons to liability in the event that a corporation or similar entity failed to make wage payments. Its reason for doing so is obvious. Decisions dealing with personnel matters and the expenditure of corporate funds are made by corporate officers and it is far more likely that the limited funds of an insolvent corporation will be used to pay wages and that a work force will be reduced while the corporation is still capable of meeting its obligations to its employees if

> personal liability is imposed on the persons who make these decisions.

*Mohney v. McClure*, 568 A.2d 682, 685 (Pa.Super. 1990), *aff'd*, 529 Pa. 430, 604 A.2d 1021 (1992) (quoting *Laborers Combined Funds of Western Pennsylvania v. Matei*, 518 A.2d 1296, 1300 (Pa.Super. 1986)) (explaining there is no basis for liability under WPCL absent evidence of active policy-making function of defendant). "Wages" under the WPCL includes contractually-agreed-upon separation or severance pay. *See generally* 43 P.S. § 260.2a. *See also McLaughlin v. Gastrointestinal Specialists, Inc.*, 696 A.2d 173, 175-76 (Pa.Super. 1997), *aff'd*, 561 Pa. 307, 750 A.2d 283 (2000) (stating: "Under the WPCL, the term 'wages' includes fringe benefits or wage supplements such as separation pay to be paid pursuant to an agreement to the employee").

Neither the WPCL nor the Statutory Construction Act defines the term "court." *See* 43 P.S. § 260.2a; 1 Pa.C.S.A. § 1991. We have found only one Pennsylvania appellate court decision addressing the use of the term "court" in a similar statutory context. *See Conner v. DaimlerChrysler Corp.*, 820 A.2d 1266 (Pa.Super. 2003) (stating use of term "court" in Magnuson-Moss Warranty Act and in Unfair Trade Practices and Consumer Protection Law includes compulsory arbitration boards because arbitrators routinely decide questions of law, fact, damages and enhancement of damages). Additionally, several decisions from our Common Pleas courts and the federal courts have addressed and concluded that WPCL claims are

arbitrable, notwithstanding the use of the term "court" in the statute. ***See***

***Weiner v. Pritzker***, 2001 WL 1807929 (Pa.Com.Pl. (Philadelphia Cty.)

December 11, 2001) (sustaining preliminary objections and ordering

plaintiff's WPCL claims to arbitration, where parties entered into valid

arbitration agreement; WPCL "does not unambiguously guarantee an

absolute right to pursue a wage claim in a court of law"; WPCL provision

forbidding waiver of claim by private agreement did not preclude application

of parties' arbitration agreement or render arbitration agreement invalid, use

of phrase, "actions may be maintained in any court of competent

jurisdiction," does not mandate judicial forum for resolution of WPCL claims;

language relied on is permissive, not imperative). ***See also Terrick v. PNC***

***Bank***, 55 Pa. D. & C.4th 403 (Pa.Com.Pl. (Allegheny Cty.) 2001) (holding

board of arbitrators could consider claim for counsel fees, despite WPCL

provision providing for "court" to award counsel fees to prevailing party);

***Tripp v. Renaissance Advantage Charter School***, 2003 WL 22519433

(E.D.Pa. October 8, 2003) (rejecting as inaccurate and self-serving plaintiff's

argument that her WPCL claims are not subject to arbitration clause in her

employment agreement because her WPCL claims do not arise from that

contract; holding WPCL depends on existence of contract; WPCL creates no

"substantive right to compensation; rather, it only establishes an employee's

right to enforce payment of wages and compensation to which an employee

is otherwise entitled by the terms of an agreement"; observing WPCL

language providing that cause of action may be maintained in any "court of competent jurisdiction" is not dispositive in determining arbitrability of statutory cause of action; party opposing arbitration showed no reason why her WPCL claims were not subject to arbitration clause in her employment agreement).

Instantly, the parties do not dispute that the employment agreement contained a fairly broad arbitration provision covering "any disputes regarding the interpretation or application" of the agreement. (**See** Physician Employment Agreement at 10; R.R. at 20a.) Regarding the breach of contract count in Appellee's complaint, Appellee alleged, "Hospital breached the Employment Agreement when it failed to pay him the Severance Payment due and owing under the terms of the Employment Agreement." (**See** Appellee's Complaint in Civil Action at 5; R.R. at 7a.) Here, the Hospital's alleged breach arose from the parties' disagreement over the meaning and application of Paragraph 6: Term and Termination in the employment agreement. The breach of contract claim necessarily concerns the "interpretation and application" of the employment agreement; thus, we can say without doubt that the parties intended to arbitrate this particular controversy.[3] Under these circumstances, Appellee's breach of

_____

[3] Even if this contract claim were the only claim subject to arbitration, which it is not, the court should have stayed Appellee's court action pending arbitration of his contract claim against Hospital. **See Central Contracting**
*(Footnote Continued Next Page)*

contract claim is subject to the arbitration clause contained in the employment agreement. **See Callan, supra**.

With respect to Appellee's WPCL claim contained in Count II of his civil complaint, the trial court stated the following, without elaboration:

> While not argued by the parties, I note, at Section 260.7, that the provisions of the [WPCL] cannot be set aside or contravened by a private agreement.
>
> In essence I [overruled] the Preliminary Objections because the dispute is broader than the hospital corporate entity and [Appellee] did not agree to have an Arbitrator hear his [WPCL] claim. Further, the chairman and individual Board Members have not agreed to Arbitration.

*(Footnote Continued)* ────────────

**Co. v. C. E. Youngdahl & Co.**, 418 Pa. 122, 209 A.2d 810 (1965) (stating: "The modern and correct rule is that, while private parties may not by contract prevent a court from asserting its jurisdiction or change the rules of venue, nevertheless, a court in which venue is proper and which has jurisdiction should decline to proceed with the cause when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation. Such an agreement is unreasonable only where its enforcement would, under all circumstances existing at the time of litigation, seriously impair plaintiff's ability to pursue his cause of action. Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things. If the agreed upon forum is available to plaintiff and said forum can do substantial justice to the cause of action then plaintiff should be bound by his agreement. Moreover, the party seeking to obviate the agreement has the burden of proving its unreasonableness"); **Sew Clean Drycleaners and Launderers, Inc. v. Dress for Success Cleaners, Inc.**, 903 A.2d 1254, (Pa.Super. 2006) (reiterating court should have stayed court action pending outcome of arbitration, based on legislative policy in statute to avoid duplicative litigation with possibility of irreconcilable results in every instance where separate action involves issue subject to arbitration); 9 U.S.C.A. § 3 (addressing stay of court proceedings when issue in case is referable to arbitration).

> Moreover, there is no Appellate authority cited to me to support [Hospital].

(**See** Trial Court Opinion at 3-4.) We respectfully disagree with the trial court's decision. Appellee's WPCL claim arose out of the alleged breach of the employment contract, it is wholly dependent on the contract, and Appellee cannot make out his WPCL claim without reference to the employment contract. The court's analysis, however, treated Appellee's WPCL claim as one falling outside the employment agreement, even though the WPCL claim is temporally and factually identical to Appellee's contract claim. In doing so, the court subordinated the shared liberal policy favoring arbitration in prevailing federal and state law.

The trial court's reliance on the statutory use of the word "court" to preclude arbitration of Appellee's WPCL claim is equally flawed. Section 260.9a(b) of the WPCL says actions "**may be maintained** in any court of competent jurisdiction"; this language is permissive, not mandatory. Nothing in the WPCL gives Appellee an absolute right to sue in a judicial forum or entitles him to exclusive judicial oversight. In reality, Appellee's effort to enforce the employment agreement through the WPCL involves issues which arbitrators are routinely called upon to decide, such as questions of law or fact, damages, statutory enhancement of damages, reasonable attorney's fees and costs. **See Connor, supra**. The arbitration clause already provides that Hospital "shall fully reimburse any reasonable attorney's fees and costs (not including damage awards and settlements)

incurred by Employee in the event of a dispute between the Hospital and Employee regarding the enforcement of any terms or conditions of this Agreement." (**See** Physician Employment Agreement at ¶13, page 10; R.R. at 20a.) Therefore, we reject Appellee's complaint regarding the costs of arbitration as prohibitive to him.

Likewise, we reject Appellee's contention that the arbitration clause contravenes or sets aside his rights under the WPCL. As the party opposing arbitration, Appellee failed to show any legislative intent for the WPCL to override the FAA. Absent some type of state-law defense that would invalidate the arbitration clause itself, we see no basis under Pennsylvania law to disfavor an agreement to arbitrate a WPCL claim. **See Salley, supra**. For us to interpret the WPCL as categorically anti-arbitration regarding wage claims would be in conflict with the United States Supreme Court decisions in **Marmet Health Care Center, Inc., supra** and **Perry, supra**. Appellee's WPCL claim for "wages" in the form of severance pay arose directly out of the parties' employment agreement; so, the employment agreement is the source of Appellee's rights asserted and benefits claimed. Because the arbitration clause specified that any disputes regarding the interpretation and application of the employment agreement shall be submitted to arbitration, we hold Appellee's WPCL claim falls within the scope of the arbitration provision. **See Callan, supra**.

Additionally, we reject the notion that the chairman and individual

Board members have not agreed to arbitration. To the contrary, the employment agreement was signed by former Hospital Board Chair, Edward A. Nicholson, Ph.D., on behalf of Hospital. Moreover, Appellee's complaint essentially identifies the Board members as agents of Hospital. (**See** Complaint at 8; R.R. at 10a.) (stating: "The above-named individual defendants are board members and officers of Hospital and individually and collectively exercise policy-making functions and/or have an active role in Hospital's decision-making process regarding payment of wages, including the decision not to pay [Appellee] the Severance Pay pursuant to the terms of the Employment Agreement"). Given the "obvious and close nexus" between Hospital and its Board members, as pled in Appellee's complaint, we conclude the Board members can enforce the arbitration clause, even as non-signatories to the employment agreement. *See Arthur Andersen LLP, et al., supra*; *Grand Wireless, Inc., supra*; *Arnold, supra*; *Pritzker, supra*. Thus, the court also erred in failing to compel arbitration for Appellee's WPCL claim.[4]

---

[4] "Pursuant to the doctrine of *lis pendens*, dismissal of a later cause of action may be appropriate when the same parties are involved, the same rights are asserted, and identical relief is sought in each action." *PNC Bank, Nat. Ass'n v. Bluestream Technology, Inc.*, 14 A.3d 831, 835 (Pa.Super. 2010). Here, Hospital's arbitration complaint and Appellee's civil action both seek a determination regarding Appellee's right to severance payments under the same employment agreement. Hospital and Appellee are parties to both pending actions. Because the Board members are in privity with Hospital, they can also be considered the same party for purposes of *lis*
*(Footnote Continued Next Page)*

Based upon the foregoing, and for purposes of deciding whether the arbitration provision is valid and encompasses the disputes at issue, we hold the employment agreement contains a binding arbitration provision that comprehends both Appellee's specific breach of contract and his identical WPCL claim; the Board members, as agents of Hospital, can enforce the arbitration clause in the employment agreement with respect to Appellee's demands; and Appellee's statutory WPCL claim is also subject to the arbitration clause in the employment agreement. Thus, the court erred in overruling Hospital's and the Board's preliminary objections and refusing to send the entire controversy to arbitration. For these reasons, we reverse and remand for referral of all of Appellee's claims to the pending arbitration.

Order reversed; case remanded with instructions. Jurisdiction is relinquished.

_____

*(Footnote Continued)* ─────────────

*pendens*. ***See Hillgartner v. Port Authority of Allegheny County***, 936 A.2d 131 (Pa.Cmwlth. 2007) (explaining privity, for purposes of determining whether two actions involve same parties, is broadly defined as mutual or successive relationships to same right of property, or such identification of interest of one person with another as to represent same legal right; typically, same loss, same measure of damages, and same or nearly identical issues of fact and law are involved). Additionally, Hospital's arbitration complaint and Appellee's court action both concern the interpretation and application of Paragraph 6 of the employment agreement. Thus, the court could have dismissed Appellee's court action pursuant to the doctrine of *lis pendens*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/26/2015