J-A03006-18

2018 PA Super 75

| | | |
|---|---|---|
| HOWARD F. GRIEST, III | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| KEVIN GRIEST | : | |
| | : | |
| Appellee | : | No. 2262 EDA 2017 |

Appeal from the Order Dated June 26, 2017
In the Court of Common Pleas of Chester County
Civil Division at No(s):  16-04054-RC

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

OPINION BY GANTMAN, P.J.:                    **FILED MARCH 27, 2018**

Appellant, Howard F. Griest, III, appeals from the order entered in the Chester County Court of Common Pleas, which overruled his preliminary objections in the nature of a motion to assert arbitration and compel bifurcation of the counterclaim of Appellee, Kevin Griest, in this partition action.  We reverse and remand for further proceedings.

The parties to this action are brothers.  On April 12, 2000, the parties' mother transferred two parcels of property to Appellant and Appellee as joint tenants with the right of survivorship: (1) real property at 265 Killian Road, Chester County, Pennsylvania ("Farm Property"); and (2) real property at 251 Killian Road, Chester County, Pennsylvania ("Rental Property").  On April 29, 2016, Appellant commenced this partition action against Appellee by writ of summons.  Appellant filed a complaint on January 3, 2017.  Specifically,

_____
*   Retired Senior Judge assigned to the Superior Court.

Appellant alleged that, since August of 2006, Appellee has retained exclusive possession of the Farm Property. Appellant claimed Appellee refused to rent the Farm Property, which prevented Appellant from collecting a fair rental value for that land. Appellant conceded that Appellee has rented the Rental Property to tenants since 2004, but Appellant insisted the rental income is inadequate to pay for the taxes, insurance and maintenance expenses for both properties. As a result, Appellant has had to contribute to those payments while Appellee has paid nothing. Appellant sought partition of the Farm Property and Rental Property so the parties can sell the properties, pay the expenses of the sales, and equitably divide the net proceeds of the sales. Appellant further requested an order assessing charges against Appellee for the fair market rental value arising from Appellee's exclusive use and occupancy of the Farm Property, as well as reimbursement of the amounts Appellant has paid for taxes, maintenance, and insurance for the properties.

On February 10, 2017, Appellee filed an answer and counterclaim, introducing a third parcel of real property at 50 West Conestoga Road, Elverson, Pennsylvania ("Elverson Property"). Appellee claimed the parties entered into an agreement dated May 5, 2006 ("Agreement"), which is relevant to the partition action. The Agreement provides, in pertinent part, as follows:

## AGREEMENT

THIS AGREEMENT made by and between [Appellant] and [Appellee], both of Chester County, Pennsylvania

- 2 -

(hereinafter collectively referred to as the "Partners"):

WHEREAS, the Partners are individuals and co-owners of [the Farm Property]; and

WHEREAS, [Appellant] owns personal property separate and distinct from the Farm Property; and

WHEREAS, [Appellee] owns personal property separate and distinct from the Farm Property;

WHEREAS, [Appellant] desires to utilize the Partners' interest in the Farm Property as collateral for purposes of purchasing [the Elverson Property]; and

WHEREAS, [Appellee] is not a party to the purchase of the [Elverson] Property; and

WHEREAS, [Appellee] has been asked by [Appellant] to sign as a limited surety for [Appellant's] purchase of the [Elverson Property], which Surety Agreement will pledge [Appellee's] interest in the Farm Property as collateral for [Appellant's] purchase of the [Elverson] Property;

WHEREAS, [Appellee] is willing to sign a Limited Surety Agreement, provided his personal property, which is separate and distinct from the Farm Property, is exempt from the Limited Surety Agreement; and

WHEREAS, in exchange for signing a Limited Surety Agreement, [Appellee] has requested of [Appellant] the right to receive Twenty Percent (20%) interest in the [Elverson Property], under certain terms and conditions; and

WHEREAS, [Appellant] is agreeable to meeting [Appellee's] requests in exchange for [Appellee's] signing a Limited Surety Agreement; and

WHEREAS, the Partners desire to set forth in this Agreement the arrangement between them;

NOW THEREFORE, the Partners, intending to be legally bound, mutually agree as follows:

1. <u>Pledge of Farm Property as Collateral for Purchase of [Elverson] Property</u>:

   The Partners hereby agree to pledge the Farm Property as collateral for [Appellant's] purchase of the [Elverson] Property. In making this pledge, [Appellee] will sign the Limited Surety Agreement attached hereto and marked as Exhibit "A". The Partners acknowledge that [Appellee] owns personalty, which is to be exempted from that property being pledged as collateral. …

2. <u>Refinancing of Loan for Purchase of [Elverson] Property</u>:

   The Partners acknowledge that [Appellant] has or will receive financing to complete his purchase of the [Elverson] Property. [Appellant] agrees that on June 2, 2011 or as soon as reasonably possible thereafter, [Appellant] will apply for refinancing of any outstanding loan encumbering the Farm Property. In seeking refinancing, [Appellant] will make all reasonable efforts to complete the refinancing without pledging any of the Farm Property as collateral for the refinanced loan(s).

3. <u>Consideration to [Appellee] for Signing Limited Surety Agreement</u>:

   In exchange for [Appellee's] signing the Limited Surety Agreement, [Appellee] shall receive from [Appellant] a Twenty Percent (20%) interest in [the Elverson Property]. [Appellant] agrees that he will be solely responsible for payment of all costs associated with the ownership and maintenance of the real property including, but not limited to taxes, water and sewer rents, insurance, repairs and maintenance of the property. Unless the property is sold to a third party on or before June 2, 2011, [Appellee] agrees he will not seek to sell his interest in the property or request any payment from [Appellant] for [Appellee's] interest in said property until June 2, 2011. …

4. <u>Farm Bank Account</u>:

   The Partners agree that all funds received by the Partners

arising out of their operation of the Farm Property shall be kept separate and distinct from any money received by either [Appellant] or [Appellee] from other ventures in which either partner may invest or otherwise be involved. …

5. Farm Operation:

Each Partner shall devote as much time as is reasonably possible to the operation of the Farm Property. Each Partner understands that the other is involved in businesses separate and distinct from the Partnership. Each Partner will endeavor to work with the other to further the interests of the Partnership, understanding that time constraints and other commitments may involve one partner contributing more time and/or effort towards the operation of the Partnership than the other.

6. Profit and Loss:

The net profits or losses of the Partnership shall be divided equally between the Partners; provided that if one partner fails to materially contribute to the operation of the Farm Property, appropriate adjustments shall be made between the Partners to reflect the contribution made by each partner toward the operation and maintenance of the Farm Property.

7. Legal Fees and Costs:

In the event any claim or litigation is initiated against [Appellee] by virtue of his signing the Limited Surety Agreement or receiving a 20% interest in the [Elverson Property], [Appellant] agrees to [indemnify] [Appellee] for all legal costs [Appellee] incurs in defending himself against any such claim or litigation. …

8. Choice of Law:

This Agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania.

9. Arbitration:

> Any disputes which arise from this Agreement shall be submitted to binding arbitration in accordance with the Rules of the American Arbitration Association and any judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

\* \* \*

(Agreement, dated 5/6/06, at 1-4; R.R. at 71a-74a). Essentially, Appellee averred he agreed to "pledge" the Farm Property as collateral so that Appellant's business entity, 50 West Conestoga Road, LP, could purchase the Elverson Property. In exchange, Appellee was to receive a twenty percent (20%) interest in the Elverson Property. Appellee insisted Appellant failed to pay him the amount owed. Under the Agreement, Appellee claimed the parties decided to operate the Farm Property jointly and to devote as much time as possible to the operation of the Farm Property. Appellee maintained Appellant devoted no time to the Farm Property since 2005, leaving Appellee to tend to the Farm Property on his own by raising livestock, harvesting crops, and hiring someone to assist with the farm management. Appellee also claimed he had expended substantial funds for maintenance of the Farm Property and Rental Property. Appellee conceded the Agreement contains a provision requiring any disputes arising from the Agreement to proceed to binding arbitration. Nevertheless, Appellee suggested that all issues involving the parties and the Farm Property, Rental Property, and Elverson Property should be resolved together in one forum, the trial court. Appellee sought partition of the Farm Property and the Rental Property, payment of his twenty

percent (20%) interest in the Elverson Property, and reimbursement for the expenses Appellee had paid to manage/operate the Farm Property and Rental Property, as well as an order assessing charges against Appellant for his failure to contribute to the management and operation of the Farm Property and/or Rental Property.

Appellant filed preliminary objections to Appellee's counterclaim on March 1, 2017, under Pa.R.C.P. 1028(a)(6), based on the arbitration clause in the parties' Agreement.[1] Appellant insisted the Elverson Property is separate and distinct from the other properties, and Appellee's claim for a twenty percent (20%) interest in the Elverson property must proceed to arbitration. Appellee responded to the preliminary objections on March 20, 2017, claiming the parties' Agreement sets forth the parties' obligations to the Farm Property, which is part of the partition action. Appellee renewed his request for a "global resolution" of all claims in the trial court.

By order dated June 26, 2017, and filed the next day, the court overruled Appellant's preliminary objections, stating:

> [Appellant's] Complaint raises a partition action regarding two properties owned by the parties. [Appellee's] Counterclaim involves *inter alia* a written agreement between the parties with regard to a third property. That agreement contains an arbitration clause. [Appellant's] Preliminary Objection is based on that arbitration agreement. Normally, we would sustain that Objection.

---

[1] **See** Pa.R.C.P. 1028(a)(6) (explaining preliminary objections may be filed by any party to any pleading based on agreement for alternative dispute resolution).

> However, the agreement also contains provisions related to the two properties at issue in the instant action and could impact the parameters of any partition. Finally, the Counterclaim itself, in addition to mentioning the third property, also makes averments that could impact any partition.

(Order, filed 6/27/17, at 1 n.1; R.R. at 98a) (internal citation omitted).

Appellant timely filed a notice of appeal on July 14, 2017. On July 18, 2017, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant timely complied on August 7, 2017.

Appellant raises three issues for our review:

> WHETHER THE CHESTER COUNTY COURT OF COMMON PLEAS ABUSED ITS DISCRETION AND/OR ERRED AS A MATTER OF LAW AND/OR ITS DECISION WAS UNSUPPORTED BY COMPETENT EVIDENCE IN OVERRULING APPELLANT'S PRELIMINARY OBJECTION TO APPELLEE'S COUNTERCLAIM, WHICH PRELIMINARY OBJECTION ASSERTED THE EXISTENCE OF AN AGREEMENT TO ARBITRATE UNDER PA.R.C.P. 1028(A)(6), IN A PARTITION ACTION WHEREIN THE COMPLAINT INVOLVES TWO PROPERTIES OWNED BY THE PARTIES, WHEN THE COUNTERCLAIM INVOLVES AN ENTIRELY DISTINCT THIRD PROPERTY THAT HAS DIFFERENT OWNERSHIP, AND THE ISSUES ASSERTED IN THE COUNTERCLAIM ARE GOVERNED BY A WRITTEN AGREEMENT THAT, BY THE COURT'S ACKNOWLEDGEMENT, SUBJECTS THE MATTERS IN THE COUNTERCLAIM TO BINDING ARBITRATION IN ACCORDANCE WITH THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION.
>
> WHETHER THE CHESTER COUNTY COURT OF COMMON PLEAS ABUSED ITS DISCRETION AND/OR ERRED AS A MATTER OF LAW AND/OR ITS DECISION WAS UNSUPPORTED BY COMPETENT EVIDENCE IN OVERRULING APPELLANT'S PRELIMINARY OBJECTION TO APPELLEE'S COUNTERCLAIM, WHICH PRELIMINARY OBJECTION

ASSERTED THE EXISTENCE OF AN AGREEMENT FOR BINDING ARBITRATION IN ACCORDANCE WITH THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION UNDER PA.R.C.P. 1028(A)(6), WHEN APPELLEE/COUNTERCLAIM PLAINTIFF ADMITTED THE EXISTENCE OF A WRITTEN AGREEMENT FOR BINDING ARBITRATION WITH RESPECT TO THE ISSUES SET FORTH IN THE COUNTERCLAIM.

WHETHER THE CHESTER COUNTY COURT OF COMMON PLEAS ABUSED ITS DISCRETION AND/OR ERRED AS A MATTER OF LAW AND/OR ITS DECISION WAS UNSUPPORTED BY COMPETENT EVIDENCE IN OVERRULING APPELLANT'S PRELIMINARY OBJECTION TO APPELLEE'S COUNTERCLAIM, WHICH PRELIMINARY OBJECTION ASSERTED THE EXISTENCE OF AN AGREEMENT FOR ARBITRATION UNDER PA.R.C.P. 1028(A)(6), WHEN THE COURT FOUND THAT THE SUBJECT AGREEMENT CONTAINED AN AGREEMENT TO SUBMIT ALL DISPUTES TO BINDING ARBITRATION, AND ACKNOWLEDGED THAT IT WOULD NORMALLY SUSTAIN THE OBJECTION BASED ON THE ARBITRATION AGREEMENT, BUT NONETHELESS PROCEEDED TO OVERRULE THE PRELIMINARY OBJECTION ON [THE] BASIS THAT THE AGREEMENT COULD PURPORTEDLY IMPACT THE PARTITION ACTION AND THE COUNTERCLAIM MENTIONS THE THIRD PROPERTY AND MAY PURPORTEDLY IMPACT THE PARTITION.

(Appellant's Brief at 5-6).

For purposes of disposition, we combine Appellant's issues. Appellant argues his claims for partition are separate and distinct from Appellee's allegations in the counterclaim relating to the Elverson Property and the parties' Agreement, so the parties should litigate Appellant's partition complaint in the trial court and Appellee's counterclaim in arbitration. Appellant asserts the parties' Agreement contains a clear and valid agreement to arbitrate claims arising out of the Agreement. Appellant avers the Agreement pertains mainly to the Elverson Property, as entirely distinct from

the Farm Property and Rental Property, which are subjects of the partition action. Appellant emphasizes that neither Appellant nor Appellee individually owns the Elverson Property; instead, an entity called 50 West Conestoga Road, LP owns the Elverson Property. Appellant stresses 50 West Conestoga Road, LP is not even a party to this action. Appellant suggests that litigating Appellee's counterclaim in the partition action would deprive that entity of due process. Appellant complains Appellee is attempting to utilize the partition action to bypass the binding arbitration clause in the parties' Agreement. Appellant maintains the dispute at issue in Appellee's counterclaim, involving Appellant's alleged breaches of his obligations under the Agreement, is unquestionably within the scope of the arbitration provision. Appellant insists the mere mention of the Farm Property in the Agreement should not permit Appellee to evade the arbitration clause and litigate all claims at the same time. Appellant concludes the arbitration clause governs Appellee's counterclaim and this Court must reverse the trial court's order denying arbitration of, and retaining jurisdiction over, the counterclaim. We agree in part but not on the grounds stated.

Initially, as a general rule:

> [A]n order [overruling] preliminary objections is interlocutory and not appealable as of right. There exists, however, a narrow exception to this oft-stated rule for cases in which the appeal is taken from an order denying a petition to compel arbitration. Our decisional law has made clear that the issue of whether a party agreed to arbitrate a dispute is a threshold, jurisdictional question that must be decided by the court.

- 10 -

***Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651, 654 (Pa.Super. 2013), *appeal denied*, 624 Pa. 683, 86 A.3d 233 (2014), *cert. denied*, ___ U.S. ___, 134 S.Ct. 2890, 189 L.Ed.2d 838 (2014) (internal citations and quotation marks omitted). The relevant standard and scope of review in this context are as follows:

> Our review of a claim that the trial court improperly denied the appellant's preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.
>
> In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement.
>
> \*   \*   \*
>
> Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary.

***Id.*** at 654-55 (internal citations and quotation marks omitted). In making these determinations, courts must bear in mind:

> (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.

- 11 -

> To resolve this tension, courts should apply the rules of contractual constructions, adopting an interpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement.

***Provenzano v. Ohio Valley General Hosp.***, 121 A.3d 1085, 1095 (Pa.Super. 2015) (internal citations omitted).

Pennsylvania law endorses the nationally accepted liberal policy favoring arbitration embodied in the Federal Arbitration Act at 9 U.S.C. §§ 1-16 ("FAA"):

> [The enactment of the FAA] expresses a liberal federal policy favoring arbitration agreements. [Congress'] purpose was to overcome state legislative and judicial efforts to undermine the enforceability of arbitration agreements, *inter alia*, by establishing a substantive rule of federal law placing such agreements upon the same footing as other contracts. The federal statute thus requires that a written provision…to settle by arbitration a controversy thereafter arising out of such contract or transaction…shall be valid, irrevocable, and enforceable, save upon any grounds at law or in equity for the revocation of any contract.[2]
>
> > [2] Pennsylvania law reflects an identical policy embodied in the Uniform Arbitration Act. ***See*** 42 Pa.C.S.[A]. § 7303 ("A written agreement to subject any existing controversy to arbitration or a provision in a written agreement to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract").

***Salley v. Option One Mortg. Corp.***, 592 Pa. 323, 330, 925 A.2d 115, 118-19 (2007). ***See also Taylor v. Extendicare Health Facilities, Inc.***, 637

Pa. 163, 194, 147 A.3d 490, 509 (2016) (stating: "Section 2 of the FAA binds state courts to compel arbitration of claims subject to an arbitration agreement"; this directive is mandatory); *Ross Development Co. v. Advanced Bldg. Development, Inc.*, 803 A.2d 194, 196 (Pa.Super. 2002) (reiterating historical perspective in Pennsylvania law favoring arbitration); *Smith v. Cumberland Group, Ltd.*, 687 A.2d 1167, 1171 (Pa.Super. 1997) (stating: "As a matter of public policy, the courts of this Commonwealth strongly favor the settlement of disputes by arbitration"). "Under the FAA, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Provenzano, supra* at 1097 (internal citation and quotation marks omitted). Importantly: "The essential and overarching purpose of the FAA…is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings and resolution of claims." *Id.* at 1098 (internal citation and quotation marks omitted).

Instantly, Appellant's complaint alleged Appellee: (1) retained exclusive possession of the Farm Property since August of 2006; (2) refused to rent the Farm Property, which prevented Appellant from collecting a fair rental value for that land; and (3) rented the Rental Property for an amount inadequate to pay for the taxes, insurance and maintenance expenses for both properties, which forced Appellant to contribute to those expenses. Appellant sought partition of the Farm Property and Rental Property so the parties could sell the

properties, pay the expenses of the sales, and equitably divide the net proceeds of the sales. Appellant further requested an order assessing charges against Appellee for the fair market rental value arising from Appellee's exclusive use and occupancy of the Farm Property, as well as reimbursement of the amounts Appellant paid for taxes, maintenance, and insurance for the properties.

Appellee's counterclaim alleged Appellant: (1) failed to pay Appellee the twenty percent (20%) interest owed under the Agreement regarding the Elverson Property; (2) devoted no time to operation of the Farm Property since 2005; and (3) caused Appellee to expend substantial funds for maintenance of the Farm Property. Appellee also sought partition of the Farm Property and Rental Property, payment of his twenty percent (20%) interest in the Elverson Property, and reimbursement for the expenses Appellee paid to manage/operate the Farm Property and Rental Property, as well as an order assessing charges against Appellant for his failure to contribute to the management and operation of the Farm Property and/or Rental Property.

The parties concede the Agreement contains a valid arbitration clause. (*See* Agreement at ¶ 9; R.R. at 74a). The Agreement delineates the parties' rights and duties regarding the Elverson Property and implicates the Farm Property. For example, the Agreement specifies that the parties will use the Farm Property as collateral for Appellant to obtain the Elverson Property; in exchange, Appellee will receive a twenty percent (20%) interest in the

Elverson Property. (*See id.* at ¶¶ 1, 3; R.R. at 72a). The Agreement requires Appellant to receive financing to complete the purchase of the Elverson Property and apply for refinancing of any outstanding loan encumbering the Farm Property, without pledging any of the Farm Property as collateral for the refinanced loan(s). (*Id.* at ¶ 2; R.R. at 72a). Under the Agreement, the parties must keep all funds received from operation of the Farm Property separate and distinct from any other money either partner obtains through individual ventures or investments. (*Id.* at ¶ 4; R.R. at 73a). The Agreement instructs the parties to devote as much time as is reasonably possible to operation of the Farm Property and to work with each other to further the interests of the "Partnership." (*Id.* at ¶ 5; R.R. at 73a). The parties agreed that any profits or losses of the "Partnership" will be divided equally between the "Partners"; provided that if one partner fails to contribute materially to operation of the Farm Property, appropriate adjustments will be made between the Partners to reflect the contribution made by each Partner toward the operation and maintenance of the Farm Property. (*Id.* at ¶ 6; R.R. at 73a).

By entering the Agreement, the parties decided on a set of rules that would govern their pursuit of Appellant's purchase of the Elverson Property and their joint operation of the Farm Property. All of the allegations in both the complaint **and** counterclaim concerning the Farm Property and the Elverson Property fall within the scope of the Agreement and its arbitration

provision. (**See id.** at ¶¶ 1, 3, 5, 6; R.R. at 72a-73a).

Additionally, the parties utilized the Farm Property as collateral for Appellant's purchase of the Elverson Property. The court cannot partition the Farm Property in a proceeding separate from claims surrounding the Elverson Property and the parties' Agreement, as the lender for the loan on the Elverson Property would have a lien on the Farm Property, in the event of a default, thereby destabilizing the Agreement.

Each party also asserted claims related to the Rental Property. The Agreement does not specifically mention the Rental Property. Nevertheless, the Agreement repeatedly refers to the "Partnership" and makes clear "[e]ach Partner will endeavor to work with the other to further the interests of the Partnership, understanding that time constraints and other commitments may involve one partner contributing more time and/or effort towards the operation of the Partnership than the other." (**Id.** at ¶ 5; R.R. at 73a). The parties' rights and duties concerning the Farm Property and the Elverson Property *vis-à-vis* the Rental Property are so inextricably intertwined that claims pertaining to all three properties should be adjudicated in one forum. In other words, adjudication of claims regarding the Elverson Property implicates claims regarding the Farm Property, which necessarily implicates claims regarding the Rental Property.

In light of the parties' relationship, course of conduct in executing the Agreement to arbitrate, and to facilitate streamlined proceedings and

resolution of claims, we consider issues involving joint ownership of and contribution to the Partnership and the three properties to fall within the scope of arbitrable issues. ***See Provenzano, supra*** (reversing trial court's order overruling preliminary objections in form of petition to compel arbitration of claim under Wage Payment and Collection Law ("WPCL"); WPCL claim arose out of alleged breach of employment contract containing arbitration clause and was temporally and factually related to appellee's contract claim; in overruling preliminary objections, trial court subordinated liberal policy favoring arbitration shared in prevailing federal and state law). ***Compare Taylor, supra*** (holding FAA preempts application of Pa.R.C.P. 213(e) (requiring consolidation of wrongful death and survival claims for trial); decedent signed agreement with nursing home facility providing that any disputes arising between parties must be submitted to arbitration; wrongful death action had to be adjudicated in trial court, because arbitration agreement, signed only by decedent, did not bind claims of decedent's wrongful death beneficiaries; wrongful death action was not derivative of decedent's survival claim, because wrongful death action belonged only to statutory claimants and not to decedent; concluding wrongful death and survival claims had to be bifurcated, with beneficiaries' wrongful death claim to proceed in trial court and decedent's survival claim to proceed in arbitration).

Unlike ***Taylor***, where the arbitration agreement could not bind the

wrongful death beneficiaries, here Appellant and Appellee signed the Agreement containing the arbitration provision. Further, nothing in the Rules of Civil Procedure prohibits litigation of a partition action in the arbitration forum. *See* Pa.R.C.P. 1551-1574 (governing actions for partition of real property). Therefore, we see no need to bifurcate resolution of the claims raised in this case. Thus, we conclude **all** claims in this matter should proceed in the single forum of arbitration, to avoid conflicting resolutions and/or the potential for duplicative awards.[2] Accordingly, we reverse the order overruling Appellant's preliminary objections to Appellee's counterclaim and remand for further proceedings.

Order reversed; case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/18

---

[2] At oral argument, the Court gave the parties an opportunity to waive the arbitration clause so all claims could proceed in the trial court. Following argument, Appellant's counsel notified this Court that the parties were unable to reach a stipulation regarding a common forum for all their claims at one time. Upon remand, the trial court might want to revisit the waiver potential. If the parties still cannot agree, the trial court must direct all claims to proceed to arbitration.