J-A14044-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAMES E. ANTIS AND CHRISTINE ANTIS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| ANDREW JAMES PRAVLIK; AND PITTSBURGH WEALTH MANAGEMENT GROUP, INC., | : | |
| | : | |
| Appellants | : | No. 19 WDA 2019 |

Appeal from the Order Entered November 28, 2018
in the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-17-017389

BEFORE: OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:         **FILED AUGUST 30, 2019**

Andrew James Pravlik ("Pravlik") and Pittsburgh Wealth Management Group, Inc. ("PWM") (collectively, "Defendants"), appeal from the Order denying their Motion to Compel Arbitration ("Motion to Compel") in this action instituted by James E. Antis ("James") and Christine Antis (collectively, "Plaintiffs"). We affirm.

On December 19, 2017, Plaintiffs filed a Complaint against Defendants alleging, *inter alia*, negligence, unjust enrichment, and unfair trade practices. Plaintiffs' claims arose out of investment-related losses that they suffered regarding an Individual Retirement Account ("IRA") held by James. At the time that the investments were made, Pravlik, doing business through PWM

(as its "Director of Investments"), served as James's securities broker.[1] First Clearing, LLC ("FCC") was the "clearing broker" and "custodian" of James's IRA, and maintained the account. Moreover, in order for Pravlik to serve as a securities broker for his clients, he was required to be registered with a FINRA-licensed "broker-dealer."[2] From 2011 to 2017, Pravlik's broker-dealer was Prospera Financial Services, Inc. ("Prospera"), which purchased and handled the securities transactions.[3]

On July 8, 2013, James executed with FCC an IRA Enrollment Form. It is undisputed that neither of the Defendants was a signatory to this form, nor were they mentioned therein. Notably, the form included an arbitration clause (the "Arbitration Agreement"). The Arbitration Agreement provides, in pertinent part, as follows:

ARBITRATION

Arbitration Disclosures:

This Agreement contains a pre[-]dispute arbitration clause. By signing an arbitration agreement, the parties agree as follows:

- All of the parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury,

---

[1] Pravlik was licensed by the Financial Industry Regulatory Authority ("FINRA").

[2] PWM was not a FINRA-licensed "broker-dealer."

[3] In February 2017, Coastal Equities, Inc. ("Coastal") replaced Prospera as Pravlik's broker-dealer. In June 2017, James transferred his IRA to another brokerage firm.

except as provided by the rules of the arbitration forum in which the claim is filed.

* * *

Arbitration Provision:

It is all agreed that all controversies or disputes which may arise between you, **FCC, Introducing Firm, Clearing Agent and any Sub-Advisor (and/or any other agent)**,[4] (collectively, "us") concerning any transaction or the construction, performance or breach of this Agreement or any other agreement between us, whether entered into prior to, on, or subsequent to the date of this Agreement, including any controversy concerning whether an issue is arbitrable, shall be determined by arbitration conducted before, and only before, an arbitration panel set up by … []FINRA[] in accordance with its respective arbitration procedures.  Any of us may initiate arbitration by filing[] a written claim with FINRA. …

Motion to Compel, 3/16/18 (IRA Enrollment Form attachment) (emphasis and footnote added).

In their Motion to Compel, Defendants asserted that they fell within the purview of the Arbitration Agreement, which required Plaintiffs to arbitrate their claims against Defendants, even though Defendants were not signatories to the Agreement or named therein.  In sum, Defendants averred that they were "agents" or "Sub-Advisors" of FCC, and/or agents of an "Introducing Firm," per the language of the Arbitration Agreement.  Plaintiffs filed a Response objecting to the Motion to Compel, asserting therein, in pertinent part, as follows:

_____

4 Notably, the IRA Enrollment Form does not define the terms "agent," "Introducing Firm," "Sub-Advisor," or "Clearing Agent."

There is [] no evidence that [FCC] or any Introducing Firm, Clearing Agent and/or Sub-Advisor is a party to this action. There is also no information to sustain an allegation that Defendants are agents of the principal or have a significant, if not congruent, interest with those who actually signed the [A]greement.

Response, 3/19/18, ¶ 8.

On May 11, 2018, Plaintiffs served discovery on Defendants, including Interrogatories. In their Answers to the Interrogatories, Defendants asserted, in relevant part, as follows:

The [A]rbitration [Agreement] expressly includes disputes between Plaintiffs and "any ... agent" of the introducing firm or clearing firm. Defendants were agents of the introducing firm, which initially was Prospera … and then[,] subsequently (from [February] 2017 until Plaintiffs transferred their accounts in June 2017)[,] was Coastal …]. In addition, Defendants are entitled to invoke the [A]rbitration [Agreement] under established legal principles concerning the scope of arbitration provisions.

Answers to Interrogatories at 6.

On September 7, 2018, Plaintiffs deposed Pravlik in connection with the Motion to Compel. The following exchange, between Pravlik and counsel for Plaintiffs, is relevant to the instant appeal:

Q. … So, as you sit here today, do you know any documents that exist between [PWM] and Coastal, Prospera or [FCC]?

* * *

A. I don't know of any.

Q. Do you know of any oral agreements that exist between [PWM] and Coastal, Prospera or [FCC]?

A. No.

N.T., 9/7/18, at 19-20. Additionally, Pravlik explained that he was not an employee of FCC, had no authority to bind FCC, and had no interest in FCC. *Id.* at 76.

Counsel for Plaintiffs further questioned Pravlik concerning whether PWM, Prospera, or Coastal constituted, under the language of the Arbitration Agreement, an "Introducing Firm" or "Clearing Agent":

> Q. We can agree, sir, that you and [PWM] … aren't an introducing firm, correct?
>
> A. That's correct.
>
> Q. And you guys aren't a clearing agent, correct?
>
> A. That's correct.
>
> Q. Whether it be under this document[, *i.e.*, the Arbitration Agreement,] or any other document, right?
>
> A. Right.
>
> * * *
>
> Q. So we don't really know whether or not Prospera or Coastal is an introducing firm of [FCC]?
>
> A. I don't know that.
>
> Q. Okay. We just don't know that because we don't have the agreements, correct?
>
> A. Correct.

*Id.* at 44, 48. **But see id.** at 47 (wherein Pravlik maintained that he was told that "documents" between FCC and Prospera/Coastal exist, but he was not privy to them because they constituted "proprietary" information).

Pravlik additionally opined that although no documents defined the terms "agent" or "Sub-Advisor," he was nevertheless an "agent" of an "introducing firm" under the Arbitration Agreement:

> A. [Pravlik] … By the definition of being a FINRA-licensed securities agent or representative, I have to be appointed with a FINRA-licensed firm, which is a broker-dealer. Therefore, by the very definition of FINRA regulations, I'm an agent of a broker-dealer. And a broker-dealer like Coastal or Prospera would be the introducing firm under the definitions of the agreements.
>
> Q. Okay. So your contention is that Prospera was the introducing firm in 2013 [(*i.e.*, when James executed the Arbitration Agreement)]?
>
> A. That's correct.

*Id.* at 46.

However, Pravlik went on to concede that he was an *independent contractor* for Prospera and Coastal, testifying as follows:

> Q: [Plaintiffs' counsel] Okay. And so whether or not you're an agent or an independent contractor or something else, is governed by the legal relationship between you and Prospera or Coastal, correct?
>
> * * *
>
> A. [Pravlik] Um-hmm.
>
> Q. And so whether or not you're an agent really determines whether or not you have a contract with Prospera or Coastal that says you're an agent, right?
>
> * * *
>
> A. Okay. Yes.
>
> Q. Okay. And you're not an employee of Coastal or Prospera; you agree with that, right?

A. I'm not an employee, right.

Q. As a matter of fact, the agreements that were provided to me say you're an independent contractor, right?

A. That's correct.

Q. And you have no authority to bind Prospera or Coastal without their prior written acknowledgment, correct?

A. Correct.

Q. And you'd agree, sir, that's not a typical agent relationship, right?

* * *

A. I don't know if that's a typical agent relationship.

Q. Let me ask you this: If you wanted to go and buy a photocopier for [PWM], could you go and sign for the contract to buy the photocopier as an agent of [PWM]? Would you have authority to do that?

A. Yes.

* * *

Q. You don't have that kind of authority with Prospera or with Coastal, do you? You have to go to them and tell them, I want to buy a copier, then you have to get written permission to buy the copier, correct?

A. Okay.

Q. Do you agree?

A. Yes.

* * *

Q. Okay. So you're not their agent, correct?

A. Okay. Yes.

*Id.* at 49-51.

By an Order entered on November 28, 2018, the trial court denied Defendants' Motion to Compel. Defendants timely filed a Notice of Appeal, after which the trial court issued a Pa.R.A.P. 1925(a) Opinion in support of its ruling.[5]

Defendants now present the following issue for our review: "Whether [Plaintiffs'] claims seeking recovery of alleged investment-related losses are within the scope of the [A]rbitration [A]greement that applies to the brokerage account at issue?" Brief for Defendants at 6.

This Court previously set forth our standard of review and the relevant law as follows:

> Our review of a claim that the trial court improperly denied the appellant's preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.
>
> In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement.
>
> Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary.

---

[5] The trial court did not order Defendants to file a Rule 1925(b) concise statement of errors complained of on appeal.

In making these determinations, courts must bear in mind:

(1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.

* * *

Pennsylvania law endorses the nationally accepted liberal policy favoring arbitration embodied in the Federal Arbitration Act at 9 U.S.C. §§ 1-16 ("FAA"):

The enactment of the FAA expresses a liberal federal policy favoring arbitration agreements. Congress['s] purpose was to overcome state legislative and judicial efforts to undermine the enforceability of arbitration agreements, *inter alia*, by establishing a substantive rule of federal law placing such agreements upon the same footing as other contracts. The federal statute thus requires that a written provision to settle by arbitration a controversy thereafter arising out of such contract or transaction shall be valid, irrevocable, and enforceable, save upon any grounds at law or in equity for the revocation of any contract.

***Griest v. Griest***, 183 A.3d 1015, 1022 (Pa. Super. 2018) (citations, brackets, ellipses, footnote and indentations omitted).

Here, Defendants contend that both prongs of the two-part test set forth in ***Griest***, to determine whether the trial court should have compelled arbitration, have been met. ***See*** Brief for Defendants at 18-19.

Concerning the first prong, Defendants point out that the Arbitration Agreement is a valid contract, which Plaintiffs do not dispute. ***See id.*** at 19. Defendants argue that "[o]nce it is determined that an arbitration agreement exists, any doubts as to whether the agreement covers a dispute should be

resolved in favor of arbitration, unless the court can state with 'positive assurance' that the dispute was not meant to be arbitrated." ***Id.*** at 20 (citing ***Provenzano v. Ohio Valley Gen. Hosp.***, 121 A.3d 1085, 1097 (Pa. Super. 2015)).

Concerning the second prong, Defendants assert as follows: "[Plaintiffs'] claims fall within the express scope of the [Arbitration] [A]greement, as they are claims asserted against 'any Sub-Advisor (and/or any other agent[])['] within the meaning of the [A]greement." Brief for Defendants at 19 (citations to brief omitted). Defendants concede that "Pravlik's agreements with Prospera and Coastal purported to provide that he was not an agent of the firms generally[.]" ***Id.*** at 21. However, Defendants aver that those agreements "expressly grant Pravlik the right to serve as the firms' registered representative and to execute securities transactions through them[,]" and Pravlik was thus either an "agent" or "Sub-Advisor" to Prospera and Coastal, which were "Introducing Firms" under the terms of the Arbitration Agreement. ***Id.*** at 21-22, 29; ***see also id.*** at 21-25 (wherein Defendants elaborate upon the duties and responsibilities Pravlik had with Prospera and Coastal).

In the alternative, Defendants urge that even if they are not regarded as agents or Sub-Advisors under the terms of the Arbitration Agreement, Plaintiffs' claims are nonetheless subject to arbitration because "an arbitration agreement may be invoked by agents of principals who are bound by the

agreement, as well as other 'non-parties[,] where the interests of such parties are directly related to, if not congruent with, those of a signatory.'" *Id.* at 30-31 (emphasis omitted) (quoting *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1122 (3d Cir. 1993)); *see also* Brief for Defendants at 32 (collecting Pennsylvania state court decisions that adopted this standard).

After reviewing the record, we discern no abuse of the trial court's discretion in denying Defendants' Motion to Compel. In its Rule 1925(a) Opinion, the trial court concisely explained the reasons for its ruling as follows:

> [The trial court] denied the Motion to Compel [] because there was not any evidence to establish that Defendants were agents of an [I]ntroducing [F]irm. The [A]rbitration [A]greement itself does not have a definition for either "agent" or "[I]ntroducing [F]irm." Documents produced during discovery provided the definition of "[I]ntroducing [F]irm" as "each broker-dealer who has entered into an agreement with FCC pursuant to which FCC, an agent for the broker-dealer, is contractually assigned the responsibility for the performance of certain back-office, trade processing and custody books and records and margin credit function."
>
> [] Defendants did not produce any evidence showing that a broker-dealer in this case had an agreement with [] FCC, and [] Pravlik confirmed[,] in his deposition[,] that [Defendants] had no information showing that the broker-dealer was an [I]ntroducing [F]irm. Additionally, [] Pravlik, himself, admitted in his deposition that he was an independent contractor and was not an agent. As Defendants are not signatories to the [A]rbitration [A]greement, and they have produced no evidence to show they fall within the [A]rbitration [Agreement], Defendants did not establish that they were entitled to arbitration in this case.

Trial Court Opinion, 1/11/19, at 1-2 (citations to briefs omitted). The trial court's analysis is supported by the record, and we agree with its

- 11 -

determination.[6] We therefore affirm on this basis in rejecting Defendants' sole issue on appeal, *see id.*, and hold that the trial court properly denied the Motion to Compel.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/2019

_____

[6] We additionally hold that Defendants were not "Sub-Advisors" under the terms of the Arbitration Agreement.