J-S69032-19

2020 PA Super 87

| | | |
|---|---|---|
| IN RE: ESTATE OF JOSEPH B. ATKINSON JR., DEED OF TRUST OF JUNE 30, 1995 FOR THE BENEFIT OF CAROLYN ATKINSON BRADY | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: WELLS FARGO & COMPANY, WELLS FARGO CLEARING SERVICES LLC, AND WILLIAM J. MICHETTI | : : : : | No. 1352 EDA 2019 |

Appeal from the Order Entered March 27, 2019
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2018-X2483

BEFORE:   SHOGAN, J., KUNSELMAN, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                                    **FILED APRIL 06, 2020**

This is an appeal from an order of the Court of Common Pleas of
Montgomery County Orphans' Court Division (Orphans' Court) overruling
preliminary objections filed by Appellants Wells Fargo & Company and Wells
Fargo Clearing Services LLC (collectively, Wells Fargo) and Wells Fargo
financial advisor William J. Michetti that sought to compel arbitration of claims
asserted against them by Appellee Carolyn Atkinson Brady (Brady) in
proceedings in the Orphans' Court concerning a trust of which she is the
beneficiary.  For the reasons set forth below, we reverse and remand.

The record on the preliminary objections established the following facts.
By Deed of Trust dated June 30, 1995, Joseph B. Atkinson, Jr. (Settlor),

_____

[*] Retired Senior Judge assigned to the Superior Court.

Brady's father, created trusts for the benefit of his children and named Edward Fackenthal (Trustee) as trustee of each of these trusts. Brady is the beneficiary of one of these trusts (the Brady Trust).

In March 2002, Trustee opened a First Union Securities CAP Account for the Brady Trust (the Brady CAP Account) and separate First Union Securities CAP Accounts for the other trusts created under Settlor's June 30, 1995 Deed of Trust. Fackenthal Dep. at 15, 17, 53-57; 3/25/02 Fackenthal Letter; Brady CAP Account Application. The Brady CAP Account was a financial services account that included a brokerage account with First Union Securities and a bank checking account with First Union National Bank. CAP Account Agreement at 1 ¶A(1). To open the Brady CAP Account, Trustee signed an account application in which he represented and agreed:

> I hereby certify that the information on this Application is true and correct and agree to notify First Union immediately if at any time any of such information should change. **I have reviewed and read the accompanying CAP ACCOUNT CUSTOMER AGREEMENT (the "CAP Agreement"), including the documents incorporated by reference in the CAP Agreement, and agree to be bound by the terms and conditions contained therein.**

Brady CAP Account Application at 4 (emphasis added); Fackenthal Dep. at 15, 17, 53. Immediately above Trustee's signature, the Brady CAP Account application stated in bold font and all capital letters:

> THE CAP AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE. BY SIGNING THIS APPLICATION, I ACKNOWLEDGE RECEIPT OF A COPY OF THE AGREEMENT CONTAINING SUCH CLAUSE.

Brady CAP Account Application at 4. Both the CAP Account Agreement and the General Account Agreement and Disclosure Document that it incorporated by reference contained agreements to arbitrate claims concerning the brokerage account. CAP Account Agreement at 1 ¶B, 11-12 ¶E(3); General Account Agreement and Disclosure Document at 6-7 ¶17.

The CAP Account Agreement provided that "[t]he Brokerage Account is governed by the terms and conditions contained in the [First Union Securities] General Account Agreement and Disclosure Document and this Agreement" and that "[i]f there is any conflict between the terms and conditions set forth in such documents incorporated by reference and the terms and conditions of this Agreement, … the terms and conditions set forth in the [First Union Securities] General Account Agreement and Disclosure Document shall supersede the terms and conditions of this Agreement for your Brokerage Account." CAP Account Agreement at 1 ¶B. The CAP Account Agreement stated:

> Your signature on the Account Application shall constitute your agreement to the terms and conditions contained in the [First Union Securities] General Account Agreement and Disclosure Document and this Agreement, as the same may be modified or amended by us from time to time.

*Id.* The CAP Account Agreement also contained the following arbitration provision with respect to the brokerage account:

> Arbitration agreement: **You agree**, and by carrying or introducing an account for you, we agree **that all controversies which may arise between you and us concerning any transaction or the construction, performance or breach of this or any other**

**agreement between you and us**, whether entered into prior to, on, or subsequent to the date hereof, **will be determined by arbitration**, such arbitration will be conducted by, and according to the securities arbitration rules and regulations then in effect of, the National Association of Securities Dealers, Inc. or the arbitration facility provided by the New York Stock Exchange.[1]

*Id.* at 12 ¶E(3).  The CAP Account Agreement further provided that "[t]his Agreement will inure to the benefit of our successors, assigns, and agents."

*Id.* at 4 ¶B(17).

The General Account Agreement and Disclosure Document advised:

This is your Client Agreement ("Agreement"). It is the contract that contains the terms and conditions governing your securities account …. Please read this Agreement carefully. If you are not willing to be bound by these terms and conditions, you should not apply for a securities account nor should you sign the Account Application. Your signature on the Account Application confirms that you have read, understand, and agree to the terms of this Agreement.
PLEASE NOTE THAT THIS AGREEMENT IS GOVERNED BY A PRE-DISPUTE ARBITRATION AGREEMENT LOCATED ON PAGE 6, PARAGRAPH 17.

General Account Agreement and Disclosure Document at 2, Introduction.

Paragraph 17 of General Account Agreement and Disclosure Document provided:

---

[1] The arbitration functions of the National Association of Securities Dealers, Inc. and the New York Stock Exchange were subsequently consolidated into the Financial Industry Regulatory Authority (FINRA).  *See*, *e.g.*, *Karsner v. Lothian*, 532 F.3d 876, 879 n. 1 (D.C. Cir. 2008); *Johannsen v. Morgan Stanley Credit Corp.*, No. 2:11-CV-01516-MCE-KJN, 2012 WL 90408 at *2 (E.D. Cal. Jan. 11, 2012).  There is no contention in this litigation that the FINRA consolidation has any effect on the enforceability of the arbitration agreements at issue here.

> Arbitration agreement: **You agree that any controversy arising out of our business or this agreement shall be submitted to arbitration** conducted before The New York Stock Exchange, Inc. or any other national securities exchange on which a transaction giving rise to the claim took place ... or the National Association Of Securities Dealers, Inc., as you may elect and in accordance with the rules of the selected organization.

*Id.* at 6-7 ¶17 (emphasis added). The General Account Agreement and Disclosure Document likewise provided that "[t]his Agreement will inure to the benefit of our successors, assigns, and agents." *Id.* at 7 ¶23.

Michetti was the First Union financial advisor for the Brady Trust CAP Account brokerage account (Brady Trust Brokerage Account). Michetti Dep. at 5-13, 29-34, 40. First Union was subsequently acquired by Wells Fargo, and Michetti continued as the Wells Fargo financial advisor for the Brady Trust Brokerage Account through 2017. *Id.* at 5-9, 31-34, 49-51, 75-77.

On July 5, 2018, Trustee filed first and final accounts and petitions for adjudication for the Brady Trust and the other trusts under Settlor's June 30, 1995 Deed of Trust. On August 31, 2018, Brady filed objections to Trustee's first and final account and petition for adjudication asserting, *inter alia*, that Wells Fargo and Michetti (collectively, Appellants) had charged excessive fees and commissions and breached the contract governing the Brady Trust Brokerage Account, and that Trustee had failed to adequately supervise and investigate Appellants' actions with respect to the Brady Trust Brokerage Account. Brady Objections to Trustee's First and Final Account and Petition for Adjudication ¶¶2-4, 6-10, 14, 16-21, 26-31.

On August 31, 2018, Brady also filed a petition to join Appellants as additional parties in the Orphans' Court proceeding concerning the Brady Trust to assert claims against them for mismanagement of the Brady Trust Brokerage Account and fees charged to the Brady Trust Brokerage Account. Petition to Join Additional Parties ¶4. Appellants filed preliminary objections to this petition to join asserting three objections: 1) that Appellants were not subject to the Orphans' Court's jurisdiction under Sections 7206 and 7777 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. §§ 7206 and 7777, because they had not accepted a delegation of Trustee's fiduciary duties; 2) that Brady lacked standing because claims of a trust must be brought by the trustee, not a beneficiary; and 3) that the claims were subject to mandatory arbitration under the arbitration agreements that governed the Brady Trust Brokerage Account. On December 19, 2018, the Orphans' Court granted Trustee permission to resign as trustee for the Brady Trust and appointed a substitute trustee for the Brady Trust (Substitute Trustee). By order dated January 4, 2019, the Orphans' Court allowed the parties 60 days for discovery on Appellants' preliminary objections to the petition to join and directed the parties to file briefs following that discovery period. On March 5, 2019, Substitute Trustee filed a joinder in Brady's petition to join Appellants as additional parties.

On March 27, 2019, the Orphans' Court entered an order overruling Appellants' preliminary objections in their entirety. Orphans' Court Order,

3/27/19. With respect to Appellants' challenge to Brady's standing, the Orphans' Court ruled that the issue was moot because the Substitute Trustee was pursuing the same claims against Appellants. *Id.* ¶2. With respect to the issues of delegation and arbitration, the Orphans' Court stated that it "will reconsider the issue of the application and enforcement of the contractual arbitration clause, pending a determination at the time of trial regarding Trustee Delegation." *Id.* ¶1. On April 26, 2019, Appellants filed the instant appeal.

Appellants argue in this appeal that the Orphans' Court erred in refusing to compel arbitration because Trustee agreed to a valid arbitration provision that encompasses all of the claims against Appellants concerning the Brady Trust and because Sections 7206(d) and 7777(d) of the Probate, Estates and Fiduciaries Code do not invalidate an otherwise enforceable arbitration agreement. Trustee advised this Court that he takes no position in this appeal and filed no brief. Appellee Brady filed a brief in which she argues that the March 27, 2019 Order is not an appealable order and that the Orphans' Court could deny arbitration under the Probate, Estates and Fiduciaries Code if it found that Trustee had delegated his duties to Appellants.[2]

---

[2] Brady previously filed an application to quash the appeal, which this Court denied without prejudice to her right to raise the issue in her brief. James F. Atkinson, a beneficiary of one of the other trusts, joined in Brady's application to quash the appeal and Brady's brief.

Because it goes to our jurisdiction to decide this appeal, we first address the issue of whether the Orphans' Court's order is an appealable order. We conclude that it is. An order overruling preliminary objections is an interlocutory order. *Chase Manhattan Mortgage Corp. v. Hodes*, 784 A.2d 144, 145 (Pa. Super. 2001). The law is clear, however, that an order overruling preliminary objections that seek to compel arbitration is an interlocutory order appealable as of right pursuant to 42 Pa.C.S. § 7320(a)(1) and Pa.R.A.P. 311(a)(8). *Saltzman v. Thomas Jefferson University Hospitals, Inc.*, 166 A.3d 465, 468 n.1 (Pa. Super. 2017); *Cardinal v. Kindred Healthcare, Inc.*, 155 A.3d 46, 49 n.1 (Pa. Super. 2017); *Provenzano v. Ohio Valley General Hospital*, 121 A.3d 1085, 1089 n.1 (Pa. Super. 2015).

Brady's contention that the Orphans' Court merely deferred and did not rule on Appellants' arbitration preliminary objection is contradicted by the language of the March 27, 2019 Order. The order did not defer ruling on any of Appellants' preliminary objections to a further hearing on the preliminary objections or limit its overruling of Appellants' preliminary objections to the issue of standing. Rather, it expressly stated that "the Court hereby overrules the Preliminary Objections." Orphans' Court Order, 3/27/19. The Orphans' Court's additional statement that it would "reconsider" the arbitration issue after "a determination at the time of trial regarding Trustee Delegation," *id.* ¶1, does not change the fact that its order denied arbitration and required

Appellants to litigate until the time of trial in a non-arbitration forum. Because the March 27, 2019 Order overruled Appellants' preliminary objection seeking arbitration, it is appealable as of right and this appeal is properly before this Court. ***Saltzman***, 166 A.3d at 468 n.1; ***Cardinal***, 155 A.3d at 49 n.1; ***Provenzano***, 121 A.3d at 1089 n.1.

Moving to the merits, we review the overruling of Appellants' arbitration preliminary objection to determine whether the Orphans' Court's ruling was supported by substantial evidence and whether the Orphans' Court abused its discretion in denying arbitration. ***Griest v. Griest***, 183 A.3d 1015, 1022 (Pa. Super. 2018); ***Cardinal***, 155 A.3d at 49-50. In this review,

> we employ a two-part test to determine whether the trial court should have compelled arbitration. First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement.

***Griest***, 183 A.3d at 1022 (quoting ***Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651 (Pa. Super. 2013)). Whether a written contract includes an arbitration agreement and whether the parties' dispute is within the scope of the arbitration agreement are questions of law subject to this Court's plenary review. ***Provenzano***, 121 A.3d at 1095; ***Warwick Township Water and Sewer Authority v. Boucher & James, Inc.***, 851 A.2d 953, 955 (Pa. Super. 2004).

Both Pennsylvania and federal law impose a strong public policy in favor of enforcing arbitration agreements. ***Marmet Health Care Center, Inc. v. Brown***, 565 U.S. 530, 532-33 (2012); ***Moses H. Cone Memorial Hospital***

***v. Mercury Construction Corp.***, 460 U.S. 1, 24 (1983); ***Saltzman***, 166 A.3d at 471; ***Cardinal***, 155 A.3d at 52. Accordingly, if a valid agreement to arbitrate exists and the dispute falls within the scope of the arbitration agreement, the dispute must be submitted to arbitration and the lower court's denial of arbitration must be reversed. ***Saltzman***, 166 A.3d at 472; ***Provenzano***, 121 A.3d at 1094, 1104.

Appellants established in their submissions with their preliminary objections that the Brady Trust entered into a valid agreement to arbitrate disputes with respect to its brokerage account. It was undisputed that Trustee signed a CAP account application when he opened the Brady Trust Brokerage Account in which he agreed to be bound by the terms and conditions contained in the CAP Account Agreement and the documents incorporated by reference in the CAP Account Agreement. Brady CAP Account Application at 4; Fackenthal Dep. at 15, 17, 53. The CAP Account Agreement provided that it and the General Account Agreement and Disclosure Document, which it incorporated by reference, governed the Brady Trust Brokerage Account. CAP Account Agreement at 1 ¶B. The CAP Account Agreement contained an agreement that "all controversies which may arise between you and us concerning any transaction or the construction, performance or breach of this or any other agreement between you and us … will be determined by arbitration." ***Id.*** at 11-12 ¶E(3). The General Account Agreement and Disclosure Document contained an agreement that "any controversy arising

out of our business or this agreement shall be submitted to arbitration." General Account Agreement and Disclosure Document at 6 ¶17.

The claims asserted by Brady against Appellants are for mismanagement of the Brady Trust Brokerage Account and fees charged to the Brady Trust Brokerage Account. Petition to Join Additional Parties ¶4. Such disputes plainly concern and arise out of the documents governing the Brady Trust Brokerage Account, the CAP Account Agreement and General Account Agreement and Disclosure Document, and Appellants' performance of those agreements, and are therefore within the scope of the arbitration agreements.

While Trustee did not sign the CAP Account Agreement or the General Account Agreement and Disclosure Document,[3] that does not negate the validity of the arbitration agreements. The terms of a contract include terms in documents that a signed contract document specifically and clearly identifies and expressly incorporates by reference. *Southwestern Energy Production, Co. v. Forest Resources, LLC*, 83 A.3d 177, 187-88 (Pa. Super. 2013) (terms in separate documents incorporated by reference in a written

---

[3] To the extent that Brady contends that Trustee did not receive the CAP Account Agreement and General Account Agreement and Disclosure Document, that assertion is not supported by the record. Trustee's testimony was that he could not recall in 2019 what documents he read or received when he signed the account application and opened the Brady Trust CAP Account in 2002, over 16 years earlier. Fackenthal Dep. at 15, 23, 54. Moreover, Trustee represented in the account application that he had received and read the CAP Account Agreement. Brady CAP Account Application at 4.

contract constitute terms of that contract); *Matlock v. Matlock*, 664 A.2d 551, 513-14 (Pa. Super. 1995) (document that parties specifically referenced in their agreement was part of their agreement); *Century Indemnity Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 534, 555 (3d Cir. 2009) (under Pennsylvania law, party was bound by arbitration clause in agreement between other parties that its contract incorporated by reference). The Brady CAP Account Application signed by Trustee specifically referenced the CAP Account Agreement and stated that Trustee agreed on behalf of the Brady Trust to be bound by the terms and conditions in the CAP Account Agreement and the documents incorporated by reference in the CAP Account Agreement. Brady CAP Account Application at 4. Indeed, the account application advised Trustee in bold, right above his signature, that he was agreeing to arbitration of disputes. *Id.*

The fact that Brady did not sign any agreement with Appellants or their predecessor, First Union Securities, is irrelevant. The owner of the Brady Trust Brokerage Account was the Brady Trust, not Brady herself. Trustee, not the beneficiary Brady, is therefore the party who had the power to enter agreements with respect to the Brady Trust Brokerage Account. 20 Pa.C.S. §§ 7780.5(a), 7780.6(a)(1), (34); June 30, 1995 Deed of Trust at 2-3, 5 § 5(C), (O). Because Brady was neither a party to the contract governing the Brady Trust Brokerage Account nor an owner of the account, her rights with respect to claims concerning the Brady Trust Brokerage Account are subject

to the contract terms to which Trustee agreed, including his agreements to arbitrate disputes, regardless of whether she agreed to those terms. ***Johnson v. Pennsylvania National Insurance Companies***, 594 A.2d 296, 299-300 (Pa. 1991); ***see also In re Blumenkrantz***, 824 N.Y.S.2d 884, 888 (N.Y. Surr. Ct. 2006).

We further conclude that Sections 7206(d) and 7777(d) of the Probate, Estates and Fiduciaries Code do not bar enforcement of a trustee's agreement to arbitrate and that it is therefore unnecessary to determine whether there was a delegation of Trustee's duties to Appellants before ordering arbitration. Both of these statutes provide for personal jurisdiction in the courts of this Commonwealth over persons who accept a delegation of a Pennsylvania trustee's fiduciary duties. Section 7206(d) provides:

> Jurisdiction.--An investment agent who accepts the delegation of a fiduciary's function from a fiduciary who is subject to the jurisdiction of a court of this Commonwealth shall be deemed to have submitted to the jurisdiction of that court even if the delegation agreement provides for a different jurisdiction or venue.

20 Pa.C.S. § 7206(d). Section 7777(d) similarly provides:

> Jurisdiction.--An agent who accepts the delegation of duties or powers from a trustee who is subject to the jurisdiction of a court of this Commonwealth shall be deemed to have submitted to the jurisdiction of that court even if the terms of the delegation provide for a different jurisdiction or venue.

20 Pa.C.S. § 7777(d). Neither of these statutes states that the jurisdiction of the orphans' court is exclusive or that claims against such agents cannot be resolved by arbitration or other types of alternative dispute resolution.

Language that a party is required to submit to the jurisdiction of a particular court is not inconsistent with arbitration and is effective, in the event of an arbitration agreement, to define where an action to enforce arbitration may be brought. *See Gaffer Insurance Co., Ltd. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1112, 1115-17 (Pa. Super. 2007) (contract language that one of the parties "will submit to the jurisdiction" of particular courts is consistent with agreement to arbitrate and is properly construed as providing a judicial forum for compelling and enforcing arbitration); *Century Indemnity Co.*, 584 F.3d at 554 (contract language that parties "will submit to the jurisdiction" of particular courts does not show intent to require resolution of disputes in court rather than arbitration, but rather provides a judicial forum for enforcing arbitration).

Indeed, the Probate, Estates and Fiduciaries Code recognizes that claims involving trusts may be subject to arbitration. Section 7780.6 of the Probate, Estates and Fiduciaries Code expressly includes arbitration of claims among the powers that a trustee has. Section 7780.6(a) provides:

> The powers which a trustee may exercise pursuant to section 7780.5 (relating to powers of trustees--UTC 815) include the following powers:
>
>           *           *           *
>
> (2) To pay or contest a claim; settle a claim by or against the trust by compromise, **arbitration** or otherwise; and release, in whole or in part, any claim belonging to the trust.

(3) To resolve a dispute regarding the interpretation of the trust or the administration of the trust by mediation, **arbitration** or other alternative dispute resolution procedures.

20 Pa.C.S. § 7780.6(a)(2), (3) (emphasis added).

Moreover, a construction of Sections 7206(d) and 7777(d) as requiring that claims against a trustee's agent be resolved by a court rather than by arbitration would be preempted by federal law. The Federal Arbitration Act provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This statutory provision requires state courts to compel arbitration of claims that are subject to a valid arbitration agreement. *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490, 509 (Pa. 2016). State laws that prohibit arbitration of particular types of claims conflict with and are preempted by the Federal Arbitration Act and are therefore invalid under the Supremacy Clause of the United States Constitution. *Marmet Health Care Center, Inc.*, 565 U.S. at 532-33; *Taylor*, 147 A.3d at 499-500, 509-510, 512. It is a well-established principle of statutory construction that statutes are to be interpreted whenever reasonably possible so as not to violate the United States or Pennsylvania Constitution. 1 Pa.C.S. § 1922(3); *Bricklayers of Western Pennsylvania Combined Funds, Inc. v. Scott's Development Co.*, 90 A.3d 682, 692 (Pa. 2014); *Harrington v. Commonwealth, Department of Transportation, Bureau of Driver Licensing*, 763 A.2d 386, 393 (Pa. 2000). Thus, even if

the language of Sections 7206(d) and 7777(d) were also susceptible to an interpretation that requires Orphans' Court resolution of claims against an agent that has accepted a delegation from a trustee, we would be compelled to reject that interpretation. ***See Blumenkrantz***, 824 N.Y.S.2d at 887 (holding, based on preemption, that similar statute did not bar enforcement of arbitration agreement by the trustee, even though statute had additional language that "the delegee may be made a party" in a proceeding concerning the trust).

Based on the foregoing, we conclude that the Orphans' Court erred and abused its discretion is overruling Appellants' preliminary objection seeking arbitration and in refusing to compel arbitration. Accordingly, we reverse and remand this matter to the Orphans' Court with instructions to order arbitration of the claims asserted against Appellants in Brady's petition to join Appellants as additional parties in the Orphans' Court proceeding concerning the Brady Trust.

Order reversed. Case remanded. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 4/6/2020*

- 16 -